## S09A1527. LUCKY v. THE STATE.
### (689 SE2d 825)

BENHAM, Justice.

Appellant Rico Antonio Lucky was convicted of and sentenced for felony murder with armed robbery as the underlying felony, assault with a deadly weapon, and possession of a firearm during the commission of a crime. On appeal, he challenges the sufficiency of the evidence supporting his convictions and takes issue with the trial court's decisions with regard to the guilty verdicts on which sentence was imposed.[1]

On July 28, 2004, Edward Rivers, Jr., was fatally shot after

---

[1] The crimes occurred on July 28, 2004, and the Clayton County grand jury returned a true bill of indictment against appellant and his co-defendant, DeJuan Curinton, on July 20, 2005. The indictment charged the two men with malice murder, felony murder/aggravated assault, felony murder/armed robbery, aggravated assault with intent to rob, aggravated assault with a deadly weapon, armed robbery, and possession of a weapon during the commission of a crime. The two men were tried together in a trial that commenced December

answering a knock on the door of the Clayton County apartment he shared with a friend. The friend, in the bathroom when the victim was shot, heard two people rummaging through the apartment after the shooting and discovered his and the victim's wallets were missing after the two intruders left. Neighbors told police they saw two men running from the building where the victim's apartment was located to a green Volkswagen Jetta with damage on one side. Appellant Rico Lucky, the owner of a damaged green Jetta, contacted Clayton County police and stated he had visited the apartment complex where the victim lived on the day of the shooting. He also told police that a passenger in his car, DeJuan Curinton,[2] had told appellant after the shooting that he had shot the victim. Another passenger in Lucky's car testified that he, appellant, and a third man known only as Link had gone to the apartment complex to visit Curinton and to purchase marijuana through him. The passenger also testified that Link and Curinton had gone to the victim's apartment and returned to the car where appellant and the passenger awaited them. A resident of the apartment complex testified that two days before the victim was shot, appellant had admonished the victim for being involved with Curinton's girlfriend; that the night before the shooting, the victim and Curinton had talked in the complex's parking lot and the witness heard the girlfriend's name mentioned; and that, just before the victim was shot, appellant and Curinton talked privately for about five minutes.

Several weeks after Curinton was arrested and charged with murder, appellant was in Sarasota County, Florida, where he flagged down a deputy sheriff and told him he wanted to talk with someone about a Georgia homicide. Appellant told a Sarasota County detective that he had caused the victim's homicide by exploiting a rift between Curinton and the victim, and had used Curinton to do his "dirty work."

---

5, 2006, and concluded with the jury's return of guilty verdicts on all counts on December 8. The trial court sentenced appellant on December 11, 2006, to life imprisonment on the felony murder/armed robbery conviction, imposed a concurrent 20-year sentence for the aggravated assault conviction, and imposed a five-year consecutive sentence for the firearm conviction. The trial court determined that the remaining convictions merged into the felony murder/armed robbery conviction. Appellant's trial counsel filed a timely motion for new trial on December 11, 2006, as did appellate counsel on January 9, 2007. On July 13, 2007, appellate counsel filed a motion to withdraw the appellant's motion for new trial. New appellate counsel was appointed in February 2008 and filed a motion for out-of-time appeal, which was denied. On April 9, 2009, a second motion for out-of-time appeal was granted by the trial court upon finding that appellant's right to direct appeal had been frustrated by his former appellate counsel. A notice of appeal was filed timely on April 15, 2009, and the case was docketed in this Court on May 29, 2009. It was submitted for decision on the briefs. Appellant's motion to dismiss the District Attorney's appellate brief because it was not timely filed is denied.

[2] Appellant and DeJuan Curinton were named in the same indictment and were tried together in the Superior Court of Clayton County. The judgment of conviction entered against Curinton was affirmed by this Court in *Curinton v. State*, 283 Ga. 226 (657 SE2d 824) (2008).

1. Appellant maintains the evidence was insufficient to support his convictions because the State presented only the uncorroborated testimony of his co-defendant, which is not sufficient to support a felony conviction (OCGA § 24-4-8), and because the State's evidence only showed appellant's mere presence at the scene of the crimes. Our synopsis of the State's case, in which we construed the evidence in a light most favorable to the verdict, supports a different conclusion. The State's evidence implicating appellant, including appellant's statements to law enforcement officers, was not limited to the testimony of co-defendant Curinton and showed appellant was a party to the crimes in that he intentionally aided and abetted the commission of the crimes and intentionally advised, encouraged, and counseled another to commit the crimes. OCGA § 16-2-20 (b) (3), (4). Appellant's "[p]resence, companionship, and conduct before and after [the] offense[s were] committed are circumstances from which participation in the criminal act may be inferred. [Cits.]" *Curinton v. State*, supra, 283 Ga. at 228-229. The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty as a party to the crimes with which he was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it sentenced appellant to life imprisonment on one of the two felony murder convictions instead of on the malice murder conviction. Appellant asserts that, had he been convicted and sentenced on the malice murder conviction, all other convictions except possession of a firearm during the commission of a crime[3] would have merged as a matter of law into the malice murder conviction.

Appellant is correct in his assertion that the trial court should have sentenced him on the malice murder conviction instead of the felony murder conviction. "When the jury returns guilty verdicts on both felony murder and malice murder charges in connection with the death of one person, it is the felony murder conviction, not the malice murder conviction that is 'simply surplusage' [cits.], and stands vacated by operation of law." *Williams v. State*, 270 Ga. 125 (4) (508 SE2d 415) (1998).

To determine the validity of appellant's contention that, had he been sentenced for malice murder, the remaining crimes for which he was convicted, other than the firearm possession conviction, would merge into the malice murder conviction, we consider OCGA § 16-1-7

---

[3] The other convictions were for felony murder/aggravated assault, felony murder/armed robbery, aggravated assault (assault with intent to rob), aggravated assault (assault with a deadly weapon), and armed robbery.

(a) and *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). The statute provides a defendant with substantive double jeopardy protection by prohibiting multiple convictions and punishments for the same offense (id. at 212), and prohibits a defendant from being convicted of more than one crime if one of the crimes is included in another. OCGA § 16-1-7 (a) (1). In the case at bar, the two felony murder convictions are vacated as a matter of law upon a sentence being imposed for the malice murder conviction (*Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the conviction for aggravated assault (assault with a deadly weapon) for which appellant received a 20-year sentence merges as a matter of fact into the malice murder conviction. *Bell v. State*, 284 Ga. 790 (1) (671 SE2d 815) (2009). The armed robbery conviction, formerly merged into the felony murder/armed robbery conviction for which appellant was sentenced, is available for imposition of sentence because it does not merge into the malice murder conviction as a matter of law or fact. *Hutchins v. State*, 284 Ga. 395, 396 (667 SE2d 589) (2008). The conviction for aggravated assault with intent to rob, merged by the trial court into the felony murder/armed robbery conviction, is also revived.[4]

With the armed robbery conviction back in play, we apply the "required evidence" test of *Drinkard v. Walker* to determine if the conviction for aggravated assault with intent to rob merges into the conviction for armed robbery. The "required evidence" test examines whether each offense requires proof of a fact which the other does not. *Drinkard v. Walker*, supra, 281 Ga. at 215.[5] Armed robbery (OCGA § 16-8-41) requires an intent to rob, the use of an offensive weapon, and the taking of property from the person or presence of another. Aggravated assault with intent to rob (OCGA § 16-8-21 (a)) requires an assault upon the victim, with the intent to rob. An assault takes place when a perpetrator either attempts to commit a violent injury to the person of the victim or commits an act which places the victim in reasonable apprehension of immediately receiving a violent injury.

---

[4] As appellant acknowledges, the sentence imposed for the conviction of possession of a firearm during the commission of a crime remains intact.

[5] In *Mercer v. State*, 289 Ga. App. 606 (3) (658 SE2d 173) (2008), the Court of Appeals stated the *Drinkard* "required evidence" test, but, by finding merger because "all the facts used to prove the offense of aggravated assault with intent to rob were used up in proving the armed robbery," appears to have applied the "actual evidence" test we disavowed in *Drinkard*. In *Elamin v. State*, 293 Ga. App. 591 (1) (667 SE2d 439) (2008), the Court of Appeals purported to apply the *Drinkard* test but did not complete the *Drinkard* analysis, finding only that aggravated assault with intent to rob required proof of at least one additional fact which robbery by intimidation did not require. The court never addressed whether robbery by intimidation required proof of at least one additional fact which aggravated assault did not require.

Armed robbery contains a provision, that property be taken, that is not a fact which must be proved in aggravated assault with intent to rob. However, aggravated assault with intent to rob does not contain a provision that is not a fact which must be proved in armed robbery. Both crimes require proof of an intent to rob, and the "assault" requirement of aggravated assault is the equivalent of the armed robbery requirement that the taking be "by use of an offensive weapon" since "use of an offensive weapon" takes place when the weapon is used as an instrument of actual or constructive force — that is, actual violence exerted on the victim or force exerted upon the victim by operating on the victim's fears of injury to the person, property, or character of the victim. *Maddox v. State*, 174 Ga. App. 728, 729 (330 SE2d 911) (1985). See also *Pope v. State*, 201 Ga. App. 537 (411 SE2d 557) (1991). In order to establish that the taking was "by use of an offensive weapon," the State must establish that the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon is being used. *Moody v. State*, 258 Ga. 818 (1) (375 SE2d 30) (1989). Stated in terms of aggravated assault, "use of an offensive weapon" takes place when the weapon is used to commit a violent injury to the person of the victim or to place the victim in reasonable apprehension of immediately receiving a violent injury. Since the "assault" element of aggravated assault with intent to rob is contained within the "use of an offensive weapon" element of armed robbery and both crimes share the "intent to rob" element, there is no element of aggravated assault with intent to rob that is not contained in armed robbery. Therefore, under *Drinkard*, the aggravated assault with intent to rob conviction merges into the armed robbery conviction.

In sum, the sentence of life imprisonment imposed on appellant should have been imposed on his conviction for malice murder rather than the conviction for felony murder/armed robbery. The conviction and sentence for felony murder/armed robbery must be vacated and, upon imposition of sentence for the malice murder conviction, the sentence imposed for aggravated assault with a deadly weapon must be vacated since that conviction merges as a matter of fact into the malice murder conviction, and the merger of the armed robbery conviction into the felony murder/armed robbery conviction must be vacated and sentence imposed for the armed robbery conviction. The sentence for possession of a firearm during the commission of a crime remains intact.

*Judgment affirmed in part and vacated in part and sentence vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 8, 2010.

*Mack & Harris, Robert L. Mack, Jr.*, for appellant.

*Jewel C. Scott, District Attorney, Anece B. White, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.