### A10A0303. TAYLOR v. THE STATE.
(696 SE2d 686)

MILLER, Chief Judge.

A Gwinnett County jury convicted Brian Taylor of aggravated assault (OCGA § 16-5-21 (a) (2)) and armed robbery (OCGA § 16-8-41).[1] Taylor appeals following the denial of his motion for a new trial, arguing that (1) the trial court erred in failing to merge the aggravated assault and armed robbery counts and (2) his trial counsel was ineffective. Concluding that the trial court should have merged the armed robbery and aggravated assault counts but otherwise discerning no error, we affirm Taylor's convictions but vacate the judgment in part and remand for resentencing.

---

[1] Eight other individuals were indicted for the same offenses. All of the indictees except Taylor and Daniel Dragu resolved the charges against them prior to trial. Dragu was tried with Taylor and convicted of robbery and aggravated assault. We affirmed in *Dragu v. State*, 299 Ga. App. XXIII (A09A1015) (2009) (unpublished).

YALE LAW LIBRARY

Viewed in the light most favorable to the jury's verdict, the record shows that Taylor believed that Derek Dennis had stolen some marijuana and money Taylor left in his girlfriend's car while the couple was away on a camping trip. Taylor and several friends decided to remedy the situation by having two girls call Dennis and tell him they wanted to meet him in a cul-de-sac, where Taylor and his friends would "scare" Dennis and retrieve the money. In the early morning of August 6, 2004, Taylor and his friends met and waited for Dennis in the cul-de-sac. Taylor and the others were hiding in the trees and behind cars when Dennis drove up with his friend, Daniel Bell, but when Dennis and Bell got out of the car, Taylor, who was holding a baseball bat, and another male approached them. Taylor swung his bat at Dennis when he attempted to run, causing Dennis to bump into the other male, who picked Dennis up and dropped him on the ground. By this time, the others had come out of their hiding places. Dennis ran toward an apartment building, where he banged on the door, pleading for help. Two males chased Dennis, and one of them began hitting him with a wooden pole, but when the pole broke, Dennis tackled his assailant. The second male ran up and hit Dennis with brass knuckles.

Attempting to defend himself, Dennis retrieved a metal lawn chair and brought it into the street. At that point, a car with two unknown male occupants pulled into the cul-de-sac, and Dennis ran toward the car, screaming for help. Instead of aiding Dennis, one of the men got out of the car, put Dennis in a choke hold, and held a pistol to his head, but he let Dennis go when one of Taylor's friends ran up and hit Dennis in the face. The man with the pistol returned to his car, and the two unknown men drove away. Havoc ensued, as Taylor's friends ran toward Dennis and began hitting him. Bell stated that he saw a group of people "on [Dennis]," some of whom had baseball bats. One of Taylor's friends pulled Dennis over onto the grass, where Taylor asked Dennis for his keys or wallet, but Dennis replied that he did not have them. Dennis tried to get up, but Taylor began hitting him with a baseball bat, continuing to demand Dennis' keys. Finally, Taylor struck Dennis in the head with the bat, causing Dennis to fall to the ground. Bell testified that after hitting Dennis in the head, Taylor reached into Dennis' pockets to pull his wallet out. Since the wallet got caught in Dennis' pants, Taylor drug Dennis along the ground to get it out and then fled the scene with his girlfriend. Subsequently, a resident of a house near the cul-de-sac found a wallet in her yard.

The parties stipulated to the testimony Dennis' treating neurosurgeon would have provided if called as a witness at trial. The stipulation stated that Dennis sustained blunt force injuries to his head, which resulted in life-threatening swelling of the brain. To

control the swelling, Dennis underwent surgery to remove a portion of his skull and a small amount of contused brain tissue.

1. Taylor contends that the trial court erred in failing to merge the aggravated assault and armed robbery counts. We agree.

The trial court initially sentenced Taylor to fifteen years to be served in the state penal system and ten years on probation. After Taylor, represented by new counsel, filed a motion to merge the armed robbery and aggravated assault counts and for resentencing, the trial court amended its prior sentence and sentenced Taylor to fifteen years in prison followed by five years on probation for armed robbery and a consecutive sentence of five years on probation for aggravated assault. The trial court, however, did not merge the two counts.

We apply the "required evidence" test to determine whether one crime is included in another such that merger is required pursuant to OCGA § 16-1-7 (a) (1). *Drinkard v. Walker*, 281 Ga. 211, 214 (636 SE2d 530) (2006). Under *Drinkard*,

> the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . [T]he important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Punctuation and footnotes omitted.) Id. at 215-216. The Supreme Court of Georgia recently held in *Lucky v. State*, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010), that while the armed robbery statute, OCGA § 16-8-41 (a), requires proof of facts not required to establish aggravated assault with intent to rob under OCGA § 16-5-21 (a) (1), namely, the taking of property from the person or presence of another, "there is no element of aggravated assault with intent to rob that is not contained in [the offense of] armed robbery." The portion of the aggravated assault statute at issue here, OCGA § 16-5-21 (a) (2), provides that a person commits aggravated assault when he or she assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." While armed robbery requires proof of additional facts, we find that like aggravated assault with intent to rob, aggravated assault under

OCGA § 16-5-21 (a) (2) does not require proof of a fact not required to establish armed robbery.

Our Supreme Court explained in *Lucky* that

> the "assault" requirement of aggravated assault is the equivalent of the armed robbery requirement that the taking be "*by use* of an offensive weapon" since "use of an offensive weapon" takes place when the weapon is used as an instrument of actual or constructive force — that is, actual violence exerted on the victim or force exerted upon the victim by operating on the victim's fears of injury to the person, property, or character of the victim.

(Citations and punctuation omitted; emphasis supplied.) *Lucky*, supra, 286 Ga. at 482 (2); see also *Oliver v. State*, 232 Ga. App. 816, 817-818 (1) (503 SE2d 28) (1998). The term "offensive weapon," for purposes of armed robbery,

> includes not only weapons which are offensive per se (such as firearms loaded with live ammunition), but also other instrumentalities not normally considered to be offensive weapons per se which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use.

(Citation and punctuation omitted.) *Livery v. State*, 233 Ga. App. 882, 884 (1) (506 SE2d 165) (1998). This definition mirrors very closely the second element of aggravated assault under OCGA § 16-5-21 (a) (2) that the assault be "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[2]

Notwithstanding that aggravated assault and armed robbery counts may merge as a matter of fact, merger does not occur when the evidence establishes that the offense of aggravated assault was complete before an armed robbery was committed. *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009). Here, the State might have been able to indict Taylor for aggravated assault based on conduct separate and distinct from his act of hitting Dennis in the

---

[2] We have held that for purposes of armed robbery, an "offensive weapon" must be an "external weapon or instrument," a requirement that does not apply under the aggravated assault statute. *Wright v. State*, 228 Ga. App. 779, 780 (1) (492 SE2d 680) (1997) (hands and feet may be deadly weapons under aggravated assault statute but not under armed robbery statute). An "offensive weapon" under the armed robbery statute, however, necessarily would fall within the category of weapons described in OCGA § 16-5-21 (a) (2).

head with a baseball bat. The indictment, however, specifically charged Taylor with the offense of aggravated assault by making "an assault upon the person of [Dennis] with . . . a baseball bat . . . by striking [Dennis] in the head. . . ." The armed robbery count of the indictment alleged that Taylor "did . . . with intent to commit theft, take a wallet, the property of [Dennis], from the person of [Dennis], by use of an offensive weapon, to wit: a baseball bat."

As the prosecutor conceded in closing argument, no witness testified that anyone other than Taylor struck Dennis in the head with a baseball bat. While Bell testified that he saw others wielding bats, he did not testify that anyone else hit Dennis in the head with a bat. Further, according to Bell, the only witness who testified about seeing Taylor take Dennis' wallet, Taylor reached into Dennis' pockets immediately after hitting Dennis in the head. In closing argument, the prosecutor also emphasized that the act of force by which armed robbery was committed was hitting Dennis in the head with the bat.

Given that the State relied on the same act of assault to establish Taylor's guilt of aggravated assault and armed robbery, the trial court should have merged those counts. *Curtis v. State*, 275 Ga. 576, 579 (2) (571 SE2d 376) (2002) (merger required when "[t]here was no evidence that [the defendant] made any other use of the gun other than to take control of the car").[3] Accordingly, we vacate the conviction and sentence imposed for aggravated assault and remand the case with direction that the trial court merge the aggravated assault count into the armed robbery count and then resentence Taylor.

2. Taylor also contends that his trial counsel was ineffective in a number of respects.

> To prevail on a claim of ineffective assistance of trial counsel, [a criminal defendant] must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Matthews v. State*, 284 Ga. 819, 821-822 (4) (672 SE2d 633) (2009). On appeal, we accept the trial court's factual findings and credibility determinations unless clearly

---

[3] See also *Howard v. State*, 298 Ga. App. 98, 100 (2) (679 SE2d 104) (2009) (merger required when evidence showed defendant only used gun to rob the victim); *Jordan v. State*, 218 Ga. App. 679, 680 (2) (462 SE2d 801) (1995) (merger required when evidence showed that bat was used directly only to effect robbery).

YALE LAW LIBRARY

erroneous but independently apply the legal principles to the facts. *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Taylor argues that his counsel was ineffective in failing to interview Dennis or subpoena him as a witness at trial. We disagree.

Taylor's girlfriend testified at trial that after Taylor's money and marijuana disappeared from her car, Taylor, Dennis, Bell, and others gathered at a friend's house, where several of Taylor's friends gave Taylor a wallet containing $700, telling him that the wallet belonged to Dennis. Taylor contends that his trial counsel should have called Dennis as a witness at trial to elicit whether he replaced the wallet that was taken from him.

> It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics, and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.

(Citations and punctuation omitted.) *Hubbard v. State*, 285 Ga. 791, 794 (3) (683 SE2d 602) (2009). The prosecutor explained in her opening that the State would not call Dennis as a witness because his injuries caused short-term memory loss, leaving him unable to recall what happened before, during, and after the relevant events. At the motion for new trial hearing, Taylor's trial counsel testified that Dennis refused to talk to his investigator prior to trial and he was pleased that Dennis would not be a witness because it was better to go to trial without a sympathetic victim. Under the circumstances, trial counsel's tactical decision that his client's defense would be better served if Dennis did not take the witness stand was not deficient. Further, since Taylor did not call Dennis as a witness at the motion for new trial hearing or present a legally acceptable substitute for Dennis' testimony, it was impossible for Taylor to show prejudice resulting from Dennis' absence at trial. *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006); *Boseman v. State*, 283 Ga. 355, 359 (3) (659 SE2d 364) (2008).

(b) Taylor argues that his trial counsel improperly opened the door to admission of "bad character" evidence during his opening statement. We find no merit in this claim.

Taylor first contends that his trial counsel placed his character in issue by conceding Taylor's guilt of aggravated assault. Clearly, this concession related to the facts alleged and crimes charged in this case, not to other transactions reflective of Taylor's character. See OCGA § 24-2-2. At the motion for new trial hearing, Taylor's trial counsel testified that he conceded Taylor's guilt of aggravated

assault because "there was overwhelming evidence of the baseball bat," he did not think it was possible to "beat" the charge, and his goal was to avoid an armed robbery conviction, which could result in a life sentence. Given that numerous witnesses testified that Taylor had a bat on the night in question and struck Dennis in the head with it while only Bell testified that Taylor took Dennis' wallet out of his pocket, trial counsel's strategy of contesting only the armed robbery count was reasonable and not ineffective. *Paul v. State*, 257 Ga. App. 86 (570 SE2d 399) (2002) (given overwhelming evidence of theft, trial counsel's strategy of showing state could prove robbery but not armed robbery was reasonable); see also *Mallon v. State*, 266 Ga. App. 394, 396 (2) (597 SE2d 497) (2004) (bench trial strategy of showing that evidence established lesser charged offense but not greater charged offense was reasonable).

Taylor next claims that his trial counsel opened the door to "bad character" evidence by stating that the evidence would show that Dennis previously stole Taylor's cash and marijuana from Taylor's girlfriend's car. The State already had indicated in its opening that it would introduce evidence that cash and marijuana had disappeared from Taylor's car and that Taylor and his girlfriend suspected Dennis of taking them. Taylor's girlfriend testified that on the day she and Taylor left on their camping trip, Dennis purchased marijuana from Taylor and that they believed Dennis stole drugs and money from her car since Dennis knew about the trip. Bell testified that he participated in buying marijuana from Taylor and that Taylor retrieved the drugs from his girlfriend's car. Regardless of Taylor's trial counsel's remarks in his opening statement, evidence concerning Dennis' transaction with Taylor and Taylor's subsequent suspicion that Dennis stole his marijuana and money was admissible as evidence of prior difficulties between Taylor and the victim, relevant to show Taylor's motives. *Ware v. State*, 259 Ga. App. 267, 268 (2) (576 SE2d 649) (2003). As such, Taylor's trial counsel's opening statement did not "open the door" to such evidence.

(c) Taylor argues that his trial counsel failed to present an adequate defense to the taking element of the armed robbery charge in that he failed to cross-examine the witness who had recovered a wallet in her yard, to challenge the admissibility of the wallet, or call or cross-examine a witness who could identify the wallet as the "res of the taking." We are not persuaded.

Taylor's trial counsel testified that he did not view the wallet as a critical piece of evidence because his strategy was not to show that no wallet was taken from Dennis but rather to demonstrate that Taylor did not take it. Trial counsel also stated that he sought to cast suspicion on the two unknown men who drove up in the middle of the incident and departed after one of them held Dennis at gunpoint.

At trial, one of Taylor's friends and co-indictees admitted that he told a detective that he saw one of those men take Dennis' wallet. Under the circumstances, Taylor failed to prove that his trial counsel's strategic decision not to cross-examine the witness who recovered the wallet or otherwise more vigorously challenge the wallet's connection to Dennis was unreasonable. See *Paige v. State*, 277 Ga. App. 687, 692 (4) (c) (627 SE2d 370) (2006) (scope of cross-examination is grounded in trial tactics and strategy and rarely constitutes ineffective assistance).

(d) Taylor contends that he received ineffective assistance when his trial counsel refused to allow him to testify at trial. The record reflects that Taylor's trial counsel advised the trial court that once the State rested, he would like time to sit down and talk with Taylor about whether he should take the stand. When the State rested, the trial court ordered a recess to give Taylor an opportunity to consult with his counsel. Thereafter, Taylor's trial counsel announced that Taylor would not testify. The trial court conducted a colloquy with Taylor in which Taylor affirmed that he understood that the decision as to whether to testify was his and that he had discussed the matter fully with his counsel and was satisfied with his counsel's advice. Taylor's trial counsel testified that he was sure he would have discussed the "pros and cons" of testifying with Taylor and that if "[Taylor] said he wanted to testify . . . he would have testified." Taylor presented no evidence to the contrary. Accordingly, the trial court was authorized to conclude that Taylor failed to establish that his trial counsel rendered ineffective assistance by preventing him from testifying. *Debaeke v. State*, 270 Ga. App. 169, 171 (2) (605 SE2d 882) (2004) (counsel not deficient where record showed appellant was aware of right to testify and trial counsel testified that if appellant had insisted on testifying, he would not have prevented him from doing so).

(e) Finally, Taylor asserts that his trial counsel was ineffective in failing to move to merge the armed robbery and aggravated assault counts and to object to his initial sentence of 25 years when the maximum punishment for each offense was 20 years. In view of the trial court's amended sentence and our disposition in Division 1, these arguments are moot.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Phipps, P. J., and Johnson, J., concur.*

DECIDED JUNE 11, 2010.

*Jason S. Monroe*, for appellant.

*Daniel J. Porter, District Attorney, Jimmie E. Baggett, Jr., Assistant District Attorney,* for appellee.