### A11A0418. DANIELS v. THE STATE.

(713 SE2d 689)

DOYLE, Judge.

Following a jury trial, Vandy Mack Daniels was convicted of armed robbery,[1] aggravated assault,[2] and possession of a firearm during the commission of a crime.[3] Daniels appeals the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred by requiring him to wear visible shackles during the trial, failing to merge his conviction for aggravated assault and armed robbery, and improperly instructing the jury on aggravated assault. For the reasons that follow, we affirm

---

[1] OCGA § 16-8-41 (a).
[2] OCGA § 16-5-21 (a).
[3] OCGA § 16-11-106 (b) (1).

Daniels's convictions in part, vacate his aggravated assault conviction and sentence, and remand the case for resentencing.

Viewed in favor of the verdict,[4] the record shows that Chearica Gardner was working at a Time Saver convenience store in Bulloch County on March 6, 2006. A masked man with a gun entered the store and climbed onto the counter. Gardner walked over to him with her hands raised, and the man demanded money, fired the gun into the air, and said, "I'm not playing with you." He then shot her in the arm, and Gardner gave him a money bag containing the store's extra change. As Gardner unsuccessfully attempted to open the cash register, the gunman shot her in the head and then left the store. Gardner described the gunman as approximately five feet and six or seven inches tall; she was unable to identify his race or any other characteristics because he was wearing a mask and gloves. Gardner was transported to the hospital, where doctors were able to extract the bullet from her head. The manager of the convenience store audited the register and determined that the gunman had absconded with approximately $200. The manager also gave the police a copy of the videotape of the robbery, which was subsequently shown to the jury during the trial.

On March 7, 2006, a man wearing a ski mask with aluminum foil under it and carrying a silver revolver and a bank bag entered a Quick Stop convenience store in Millen, Georgia. The man screamed at the cashier, pointed the gun at her, demanding that she put money in the bank bag, and told her, "I ain't playing with you, bitch." The man "pull[ed] the hammer back two or three times," but the gun did not fire. The cashier handed the man money from three cash registers and a money bag containing dollar bills, the man ran out of and behind the store, and one of the employees chased him. Daniels was apprehended shortly thereafter, lying on the ground near railroad tracks. Police recovered from Daniels a chrome-plated revolver, gloves, two bank bags full of money, a ski mask, and an aluminum foil mask.

The GBI crime lab performed a ballistics analysis on the gun recovered from Daniels following the March 7 armed robbery at the Quick Stop, a bullet recovered from the Time Saver store, and the projectile recovered from Gardner's head. According to the firearms examiner, the bullet recovered from Gardner's head was fired from the revolver found next to Daniels following the subsequent Quick Stop robbery, and the bullet recovered from the Time Saver store was "probably" fired from the same revolver.[5]

---

[4] See *Duffie v. State*, 301 Ga. App. 607 (688 SE2d 389) (2009).

[5] The firearms examiner testified that "there is a possibility" that the bullet recovered

Daniels was charged with armed robbery, aggravated assault, kidnapping, and possession of a firearm during the commission of a crime. He was acquitted of kidnapping and convicted on the remaining counts. The trial court denied Daniels's subsequent motion for new trial, and this appeal followed.

1. Daniels argues that the evidence was insufficient to sustain his conviction because it merely showed that he possessed the gun from which the bullet recovered from Gardner's head was shot. He further contends that "[t]he reliable physical evidence — referring to the established fact that . . . Daniels is at least two inches taller than the suspect — in fact, contradicts the notion that . . . Daniels is that person." This enumeration is without merit.

> In determining the sufficiency of the evidence to sustain a criminal conviction, we view the record in the light most favorable to the verdict, and without affording the defendant a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.[6]

Daniels's characterization of the evidence is incomplete. The State presented evidence that Daniels was apprehended immediately after the Quick Stop robbery, and he was found with a mask, bank bags containing money, and a gun; the bullet removed from Gardner's head following the Time Saver robbery the previous day was fired from the gun recovered next to Daniels after the Quick Stop robbery. In both incidents, the masked assailant ran into a convenience store, demanded money, told an employee that he was "not playing," pointed a gun at an employee, and pulled the trigger. Further, the jury viewed the video surveillance from the Time Saver robbery. This evidence was sufficient to support Daniels's conviction in this case.[7] The fact that the victim was unable to identify the masked gunman and, after being shot in the arm and the head, estimated that her assailant was two inches shorter than Daniels does not demand a reversal; the weight of such evidence was a matter within the exclusive province of the jury.[8]

2. Daniels contends that the trial court erred by requiring him to

---

from the Time Saver store "could have been fired from another gun."

[6] (Citation omitted.) *Culver v. State*, 290 Ga. App. 321 (659 SE2d 390) (2008).

[7] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Mullins v. State*, 267 Ga. App. 393, 395 (1) (a) (599 SE2d 340) (2004); *Hardy v. State*, 223 Ga. App. 597, 598-599 (2) (478 SE2d 423) (1996).

[8] See *Culver*, 290 Ga. App. at 322.

be shackled during the trial. We find no reversible error.

This case was initially scheduled for trial on July 18, 2007. Immediately after Daniels was brought into the courtroom from the holding cell, he got into an argument with trial counsel, and Daniels threatened to kill counsel when he was released from prison. The trial court relieved counsel, appointed new trial counsel, and rescheduled the trial for January 31, 2008.

Daniels was issued civilian clothing by the sheriff's department to wear during the rescheduled trial. Before the trial began, Daniels ripped the inseam of the pants from the crotch to the ankles, and he ripped all of the buttons off of his shirt. The sheriff's department arranged for a second set of civilian clothing, which Daniels wore into the courtroom during the trial court's preliminary instructions to the jury. Daniels returned to the holding cell, and when the deputy went into the cell to retrieve him, he found Daniels standing in his underwear with his shirt again ripped down the center. The deputy then gave Daniels a jail jumpsuit to wear, but Daniels ripped that as well. After testimony from the deputy and argument from the prosecutor and trial counsel,[9] the trial court required Daniels to be shackled in the courtroom for the remainder of the trial, stating that

> [t]he [c]ourt is highly concerned about the safety of those individuals that are responsible for maintaining Mr. Daniels while he's here at the courthouse and highly concerned about the safety of all court personnel and especially the 13 jurors that are here with us today along with the safety of his counsel. . . . And based upon his threats to his previous counsel in the transcript dated July 18th of 2007 and also his actions this morning here at the courthouse, the [c]ourt is going to bring Mr. Daniels back in with his jumpsuit[,] and he will also be cuffed and shackled at this point.[10]

When the jurors returned to the courtroom, the trial court instructed them that

> [n]ow it may appear that Mr. Daniels is dressed a little bit differently[11] than he was when we first came in here. I'm instructing you not to take that into consideration in your

---

[9] Trial counsel objected to the shackles, which were visible to the jury, and suggested that the court instead require Daniels to wear a shock belt under his clothing, but the sheriff's department did not have one.

[10] The trial court also noted that it had considered Daniels's "previous history with the Department of Corrections" and a "situation[ ] at the county jail" involving a fight with another inmate.

[11] Daniels was wearing a jail jumpsuit, which was his fourth set of clothing for the day.

final deliberations. He has a right to a trial by jury. That's why you're here. And you're under oath to take the evidence that's presented from this witness stand and make a determination on that.[12]

Daniels maintains that the trial court abused its discretion by ordering him to be tried in shackles because he "was not a flight risk [and t]here was no evidence that he was physically combative or that — outside of his apparent animus toward the previous public defender — he was a threat to anyone."

"It is well established that 'the accused, while in the presence of the jury, should be free of indicia of guilt such as wearing shackles or prison garb, or being surrounded by uniformed security personnel, or anything else that might infringe upon the presumption that he is innocent.' "[13]

However, there is no question that every court has the power to preserve and enforce order in its immediate presence, and as near thereto as is necessary to prevent interruption, disturbance, or hindrance to its proceedings. And, where the court is familiar with the defendant's background of violent and disruptive behavior, it is within its sound discretion as to the necessity and extent of restraint to be imposed upon a disorderly defendant to prevent disruption of orderly court proceedings. . . . [Thus, a]t trial, where there is good and sufficient cause, the court has discretion in requiring a defendant to be handcuffed or shackled for security reasons. Abuse of discretion is the test on appeal where restraining devices have been used in the trial court.[14]

Here, Daniels was accused of shooting the victim in the head, and there was evidence that he attempted to shoot the employee in the subsequent robbery; he had threatened to kill his previous counsel in this case; he was involved in a physical altercation at the jail; and he repeatedly destroyed and removed his clothes in the holding cell during the trial, despite his assurances that he would stop doing so.[15] And the trial court properly instructed the jury to

---

[12] The trial court repeated this instruction during the charge to the jury.

[13] (Punctuation omitted.) *Mapp v. State*, 197 Ga. App. 7 (397 SE2d 476) (1990).

[14] (Citations and punctuation omitted.) *Dennis v. State,* 170 Ga. App. 630, 632 (3) (317 SE2d 874) (1984).

[15] At a previous bond hearing, the prosecutor advised the trial court that Daniels was arrested and charged with escape in 1984 and twice in 1986.

disregard Daniels's appearance and to reach a decision based solely on the evidence.[16] Under these circumstances, we find no abuse of discretion in the trial court's requirement that Daniels be shackled during the trial.[17]

3. Daniels argues that the trial court erred by failing to merge his aggravated assault and armed robbery convictions as a matter of fact. We agree.

In the indictment, the State alleged that Daniels committed armed robbery by "unlawfully, with the intent to commit theft, [taking] property, to wit: U. S. currency, from the immediate presence of Chearica Gardner, by use of an offensive weapon, to wit: a .22 caliber RG revolver. . . ." The indictment charged Daniels with committing aggravated assault by "unlawfully mak[ing] an assault upon the person of Chearica Gardner, with intent to rob by pointing a .22 caliber RG revolver at said victim and demanding that she give him the money and then firing said weapon at her three times. . . ."

"To determine if the aggravated assault[ was a] lesser included offense[ ] of the armed robber[y], we apply the 'required evidence' test set forth in *Drinkard v. Walker*.[18] Under that test, we examine whether each offense requires proof of a fact which the other does not."[19]

> Armed robbery (OCGA § 16-8-41) requires an intent to rob, the use of an offensive weapon, and the taking of property from the person or presence of another. Aggravated assault with intent to rob (OCGA § 16-[5]-21 (a)) requires an assault upon the victim, with the intent to rob. An assault takes place when a perpetrator either attempts to commit a violent injury to the person of the victim or commits an act

---

[16] See *Allen v. State*, 248 Ga. App. 79, 83 (3) (545 SE2d 629) (2001) ("The decisions of this court make it clear that when physical restraints are necessary and are observed by the jury in a criminal case, the trial court must instruct the jury that the use of physical restraints on the defendant has no bearing on the defendant's guilt or innocence and should not be considered by them during their deliberations.") (punctuation omitted).

[17] See *Corbin v. State*, 240 Ga. App. 788, 788-789 (1) (525 SE2d 365) (1999) (trial court did not abuse its discretion by requiring the defendant to wear visible restraints during the jury trial because the defendant "had threatened the judge and everyone with whom he came into contact the day before," and the court gave a limiting instruction); *Dennis*, 170 Ga. App. at 632 (3); *Jivens v. State*, 215 Ga. App. 306, 307 (4) (450 SE2d 328) (1994) (no abuse of discretion in requiring jail clothing and shackles because the defendant previously defecated on a table, telling a sheriff's deputy that "that's what he thought about the court," and he removed all of his clothes on the way to court and had to be physically restrained). Compare *Allen*, 248 Ga. App. at 82 (2) (abuse of discretion to require visible restraints because there was no evidence that the defendant had attempted to escape or that he exhibited disruptive conduct before the court or threatened anyone, and the court failed to give a curative instruction to the jury).

[18] 281 Ga. 211 (636 SE2d 530) (2006).

[19] (Punctuation omitted.) *Long v. State*, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010).

which places the victim in reasonable apprehension of immediately receiving a violent injury.[20]

Our Supreme Court has

concluded that armed robbery contained a requirement — the taking of property — that aggravated assault did not, but that aggravated assault with intent to rob did not require proof of a fact which armed robbery did not. Both crimes required proof of an intent to rob, and the assault requirement of aggravated assault — that the defendant attempt to commit a violent injury to the victim or place the victim in reasonable apprehension of receiving a violent injury — was the equivalent of the "use of an offensive weapon" requirement of armed robbery.[21]

Therefore, under *Lucky*, the aggravated assault with intent to rob conviction merged into the armed robbery conviction.[22] Thus, we vacate Daniels's conviction and sentence for aggravated assault and remand the case to the trial court for resentencing.[23]

4. Our holding in Division 3 "moots [Daniels's] contention regarding the trial court's jury charge on aggravated assault."[24]

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 6, 2011.

Peter D. Johnson, for appellant.
Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant Dsitrict Attorney, for appellee.

---

[20] *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010).
[21] *Long*, 287 Ga. at 888-889 (2), citing *Lucky*, 286 Ga. at 481 (2).
[22] See *Lucky*, 286 Ga. at 482 (2).
[23] See *Long*, 287 Ga. at 889-890 (2).
[24] Id.