**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 15, 2018**

# In the Court of Appeals of Georgia

A18A1293. HARP v. THE STATE.                                   DO-043 C

DOYLE, Presiding Judge.

Following his conviction for armed robbery,[1] Antwain Deshawn Harp appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the verdict, and (2) the trial court abused its discretion by requiring him to wear civilian clothing instead of his National Guard uniform. For the reasons that follow, we affirm.

Construed in favor of the verdict,[2] the evidence shows that Kendric Lawrence contacted his co-worker Krishad Clark to ask if he knew of anyone interested in selling a car. Two hours later, Clark called Lawrence back to tell him that he had

---

[1] OCGA § 16-8-41 (a).

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

identified a friend, Harp, with a vehicle he wished to sell to Lawrence. Harp and Lawrence exchanged text messages to discuss the details, and after they agreed on price, Harp offered to pick up Lawrence in the car to show it to him.

They met as agreed, and after inspecting the vehicle with Lawrence, Harp offered to retrieve the title from his girlfriend's apartment, directing Lawrence where to go as he test drove the vehicle. After they arrived at the apartment complex, they exited the vehicle, with Harp leading the way. As Harp walked through a breezeway and turned left, Clark, who had been waiting there, appeared with a pistol. Harp walked past Clark, and Clark pointed the pistol at Lawrence. Lawrence recognized Clark from his voice and appearance and determined that he had been set up for a robbery. Clark demanded Lawrence's money and any drugs he possessed, and Lawrence gave him the $2,700 in cash that he had brought to purchase the vehicle. Clark then took Lawrence's phone, ordered him out of the breezeway at gunpoint, and fled.

Lawrence ran to the building of a resident he recognized and knocked on her door, asking her to call the police. An officer arrived at the scene a few minutes later, and as Lawrence spoke with the officer, Harp walked up, and Lawrence identified

him as the person who "set me up . . . to get robbed." Police detained Harp at the scene, and he and Clark ultimately were charged with armed robbery.

Following a jury trial, Harp was found guilty and moved for a new trial. The trial court denied his motion, and Harp now appeals.

1. Harp contends that the evidence was insufficient to support the verdict, arguing that the evidence of his knowing participation in the robbery was weak and relied heavily on uncorroborated testimony from his accomplice. Based on our review of the evidence, we disagree.

When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[3]

---

[3] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Under this standard, "evidence may be less than overwhelming, but still sufficient to sustain a conviction. . . . [W]e must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact."[4]

Here, the evidence at trial included testimony from the victim detailing how he was put in touch with Harp to purchase a vehicle. The victim also described being guided by Harp to the location where Clark was waiting with a gun to rob him of the money he brought to purchase the car. Likewise, Clark, who pleaded guilty to being the robber with a gun, testified at trial about Harp's involvement in planning and executing the robbery. Clark explained that as they discussed the sale of the car, Harp raised the idea of setting up the victim to steal the money from him instead of selling the car. Before the purported sale, Harp and Clark together determined the meeting place, and they agreed that Harp would call Clark when he arrived with the victim. Clark testified that he would perform the robbery against both Harp and Lawrence, making it look unplanned and as though he was expecting to steal drugs that Harp would be carrying.

---

[4] (Citations and punctuation omitted.) *State v. Cash*, 302 Ga. 587, 592 (807 SE2d 405) (2017), quoting *Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014).

Harp argues that the testimony by Clark, Harp's armed accomplice, was uncorroborated and therefore insufficient to support his conviction under OCGA § 24-14-8.[5] It is true that Clark's testimony outlined Harp's participation in setting up the robbery, but it was not the only evidence of Harp's knowing involvement. The victim testified that he believed that he was set up based on his observation of Harp's demeanor and actions during the robbery. The victim explained that when Clark appeared with the gun, Harp simply "walked away," and the gunman did not pursue him or otherwise attempt to hinder Harp's exit from the scene: "Why would you rob one person when there's two people?" Further, phone records introduced at trial show Harp and Clark communicating while Harp was guiding the victim toward the pre-arranged meeting point as well as immediately after the robbery when Clark was trying to find Harp. Last, Harp confessed to police that he carried a bag with marijuana in it at the time of the robbery, which was consistent with Clark's testimony that the intended plan was for Clark to make it look like a robbery seeking drugs.

---

[5] That Code section provides: "The testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason."

"Corroborating evidence may be slight . . . and may be entirely circumstantial. . . . Once the State has introduced independent evidence implicating the defendant, it is for the jury to decide whether the accomplice's testimony has been sufficiently corroborated."[6] Based on the independent evidence of Harp's involvement in planning the robbery, including evidence of his conduct before, during, and after the robbery, the jury was authorized to find that Harp knowingly participated in the robbery with Clark.[7]

2. Harp also challenges the trial court's refusal to allow him to wear his National Guard uniform during trial. On the first day of trial, the State objected to Harp wearing his military uniform at trial, and after a brief colloquy in chambers, the trial court prohibited the defendant from appearing in his uniform and allowed him to change into civilian clothes. Finding no Georgia precedent on the specific issue, the trial court based its ruling on *State v. Marquez*[8] and held that wearing the uniform

---

[6] (Citations omitted.) *Mangram v. State*, __ Ga. __ (II) (Case No. S18A0846, decided Aug. 2, 2018).

[7] See id. ("[E]vidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime."), quoting *Cisneros v. State*, 299 Ga. 841, 845 (792 SE2d 326) (2010).

[8] 145 N.M. 31 (193 P3d 578) (N.M. Ct. App. 2008), reversed on other grounds by *State v. Marquez*, 147 N.M. 386, 393 (11) (B) (223 P3d 931) (2009), overruled on

was an attempt to influence the jury without introducing evidence or allowing cross-examination. In *Marquez*, the Court of Appeals of New Mexico reached the same conclusion, noting that:

> [a d]efendant's appearance in front of the jury in a military uniform 'tends to pull on the heart strings of some members of the jury,' and that 'just the sight of somebody in a camouflage uniform in today's climate leads to something else in the minds of the jurors . . . and may prevent the jury from just simply hearing a case on its facts and coming to a jury decision on the merits.'[9]

We review the trial court's ruling for an abuse of discretion.[10]

Like the trial court, we have not found any Georgia cases directly on point. In one case cited by Harp, *Carver v. State*,[11] this Court ruled that the trial court did not abuse its discretion in allowing *a victim* to testify in his military uniform over the

---

other grounds by *State v. Tollardo*, 275 P.3d 110, 121 n. 6 (N.M. 2012).

[9] (Punctuation omitted.) *Marquez*, 145 N.M. at 34.

[10] See *Carver v. State*, 324 Ga. App. 422, 423 (750 SE2d 735) (2013) (addressing a motion in limine regarding a witness's uniform); *Brown v. State*, 240 Ga. App. 321, 323 (2) (523 SE2d 333) (1999) (noting a defendant's right to be free of indicia of guilt such as prison garb but providing for a trial court's discretion in ensuring courtroom safety).

[11] 324 Ga. App. at 422.

objection of a defendant accused of reckless conduct and pointing a firearm at the victim.[12] But that case involved the attire of a witness on the stand subject to cross-examination, and the fact of the witness's military service was otherwise before the jury in the form of his testimony explaining that he was deployed in Afghanistan during a time when the defendant believed him to be trespassing and stealing from his chicken house.[13] Defense counsel refused a curative instruction and again referred to the witness's military service during closing argument, emphasizing that the victim joked that he had seen "bigger guns waved."[14] Under those circumstances, this Court held that there was no abuse of discretion in allowing the witness to testify in uniform.[15]

Here, by contrast, the defendant did not testify, he was not subject to cross-examination, and his military membership was not otherwise before the jury at trial. Harp's military membership was entirely extraneous to the issues at trial and could be construed as an attempt to influence the jury in a manner not based on witness

---

[12] See id.

[13] See id. at 425.

[14] Id. at 425-426.

[15] See id.

testimony or other evidence of his guilt or innocence.[16] Further, this is not a case in which the defendant was prohibited from presenting proper evidence of his good character[17] or his good reputation in the military community.[18] Under these circumstances, the trial court did not abuse its discretion.[19]

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*

---

[16] Compare *Daniels v. State*, 310 Ga. App. 541, 545 (2) (713 SE2d 689) (2011) ("It is well established that the accused, while in the presence of the jury, should be free of indicia of guilt such as wearing shackles or prison garb, or being surrounded by uniformed security personnel, or anything else that might infringe upon the presumption that he is innocent.") (punctuation omitted).

[17] See OCGA §§ 24-4-404 (a) (1), 24-4-405; *Rai v. State*, 297 Ga. 472, 481 (7) (775 SE2d 129) (2015) ("[A] defendant may produce evidence of his good character in two ways. He may take the stand himself and testify as to his past good conduct, or . . . he may call third parties to testify as to his general reputation in the community.") (punctuation omitted).

[18] See, e.g., *Smith v. State*, 259 Ga. App. 736, 738 (3) (578 SE2d 295) (2003) (decided under former Evidence Code).

[19] See *Marquez*, 145 N.M. at 34-35.