NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 6, 2025

S25A0131. JOHNSON v. THE STATE.

PINSON, Justice.

Alex Lee Johnson was convicted of felony murder and other crimes related to the shooting death of Patricia Sabb.[1] On appeal, he

---

[1] Johnson was indicted by a Chatham County grand jury on October 17, 2018. He was charged with malice murder, three counts of felony murder, ten counts of aggravated assault, theft by receiving, ten counts of possession of a firearm in the commission of a felony, armed robbery, hijacking a motor vehicle, and two counts of possession of a firearm by a first offender probationer. After trial, the jury found Johnson guilty of felony murder, hijacking a vehicle, armed robbery, five counts of aggravated assault, theft by receiving, and ten counts of possession of a firearm. The jury acquitted Johnson of malice murder, and the trial court granted a mistrial as to several other counts where the jury was unable to reach a verdict. The trial court sentenced Johnson to life in prison with the possibility of parole for felony murder. The trial court also sentenced Johnson to 10 years after the life sentence for several counts and a combined 5 years of probation following the 10-year sentence for several counts. Johnson filed a motion for new trial that raised, among other grounds, a merger issue. The trial court granted the motion as to the merger issue and entered an amended sentencing order vacating the sentence for one of the possession of a firearm counts. It denied the motion as to the other grounds raised. Johnson then timely filed this appeal, which was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

contends that the trial court abused its discretion in admitting evidence of his gang membership and that the trial court erred by refusing to instruct the jury on two lesser-included offenses. But the trial court had the discretion to admit the gang evidence on the basis that it was relevant to motive: evidence that Johnson was part of a gang with a "code" that required retaliatory violence under the circumstances made it more likely that he committed the crimes. And any danger of unfair prejudice did not substantially outweigh the probative value of this evidence. As for the claims of instructional error, even assuming error, Johnson was not prejudiced by the failure to instruct the jury about the lesser-included offenses. It was highly likely that the jury still would have found Johnson guilty of the greater offenses even if it had heard those instructions, because the only difference between the greater and lesser offenses was that the greater offenses included the presence and use of a firearm, and Johnson admitted to having a gun and using it to threaten the hijacking victim. So Johnson's convictions are affirmed.

1. The evidence at trial showed the following. On the night of July 23, 2018, Sabb was shot twice as she stood in the kitchen of her home in Savannah. She later died from her wounds. The gunshots came from a car on the street. Several other people were in the home at the time and testified to hearing anywhere from six to sixteen total shots. One of the other people in the home called 911, and police responded to the scene.

As police investigated the shooting, they came to believe that Sabb was not the shooters' target. Instead, they came to suspect that the target was Sabb's grandson, Rashamel Edwards. Edwards visited Sabb's home often, and he was known to be a member of a subset of the Crips gang.

Johnson had a dispute with Edwards around the time the shooting occurred. Johnson was dating Nigeria Collins, with whom Edwards had a child. Collins testified that Johnson was frustrated about Edwards being the father of the child. She further testified that Johnson, like Edwards, was a Crips gang member. Messages between Collins and Johnson showed that Johnson wanted to harm

Edwards, even though Johnson ultimately promised Collins he would not take any action against him.

But Johnson broke that promise. In the days before the murder, Johnson and a few others stole a car that Edwards was driving. Johnson admitted to the hijacking, telling police that he had a pistol in his pocket and told Edwards "don't make me whip it out" so he could steal the car from him. In retaliation for the hijacking, Edwards put Johnson on a "death clock" — meaning that he would kill Johnson within 48 hours.

The State's theory of the case was that, because of the warning, Johnson and others went to kill Edwards first at Sabb's home. Johnson eventually admitted to being in the car from which shots were fired into Sabb's home. He also admitted to having a gun in his hand when the shooting happened, but he maintained that he never fired it.

At trial, the State sought to introduce evidence of Johnson's and Edwards's gang memberships. The State argued that the evidence was relevant to show Johnson's motive: by dating Collins,

4

who had a child with Edwards, Johnson had violated the "G Code" that gang members were supposed to follow, which caused the dispute between Johnson and Edwards. That dispute led Johnson to hijack Edwards's car, which prompted Edwards's death-clock warning, and in turn prompted Johnson's preemptive attack against Edwards. The defense objected to this evidence on several grounds in a motion in limine, which the trial court denied.

2. Johnson claims that the trial court abused its discretion by admitting evidence that Johnson was a member of a subset of the Crips gang as relevant to his motive for the crimes; to explain the "content of certain communications" with Johnson; and to explain "why Edwards did not cooperate with police regarding the shooting of his grandmother." Johnson argues that the evidence was not relevant under OCGA § 24-4-401 (Rule 401) and that the evidence should have been excluded under OCGA § 24-4-403 (Rule 403) and OCGA § 24-4-404 (Rule 404). We consider each of these arguments in turn.

(a) Evidence is relevant if it has "any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Johnson claims that evidence about his gang membership was not relevant under Rule 401 and therefore should not have been admitted. Because counsel objected on this basis at trial, we review the trial court's admission of the evidence for an abuse of discretion. *Carter v. State*, 302 Ga. 200, 202 (2) (805 SE2d 839) (2017).

We agree with the State and the trial court that evidence of Johnson's gang membership was relevant to Johnson's motive for the crimes. There was evidence that the dispute between Johnson and Edwards arose because Johnson was dating Collins. In his statement to police, Johnson said that "I was going with his baby momma, that's one violation of the street code." Although Johnson contends that the only motive at issue was "jealousy" over a woman, this evidence tended to show that dating a fellow gang member's "baby momma" was understood as a violation of the "G Code" or "street code" that the gang followed. Texts between Johnson and

6

Collins further illustrated the bad blood between the two men. And Johnson eventually acted on his ill will toward Edwards by hijacking his car. Then Edwards put Johnson on a 48-hour "death clock" — a period during which Edwards threatened to kill Johnson. And that death-clock warning led to Johnson's own attempted preemptive attack against Edwards, which resulted in Sabb's death.

Even if these actions were also or even mostly the result of ordinary jealousy, evidence that they may have been driven by Johnson's and Edwards's gang membership and the attendant "code" and beliefs tended to make it more likely that Johnson in fact targeted Edwards and shot into Sabb's home. So the trial court did not abuse its discretion in concluding that the evidence was relevant to prove motive.[2]

(b) Under Rule 403, evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." OCGA § 24-4-403. We have explained that "[t]he probative value of

---

[2] Because we conclude the evidence was relevant to motive, we need not address the State's other relevance arguments. Johnson does not raise any claims about the jury instructions regarding those other grounds for relevance.

7

evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *Harris v. State*, 314 Ga. 238, 263 (3) (a) (875 SE2d 659) (2022) (citation and punctuation omitted). As for prejudice, "inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." Id. (cleaned up). In such cases, unfair prejudice gives the factfinder an "improper basis" for deciding the case on something other than "proof specific to the offense charged." Id. Johnson claims that the evidence of his gang membership should have been excluded under Rule 403. Because Johnson objected at trial on this basis, we review this claim for an abuse of discretion. *Moore v. State*, 307 Ga. 290, 295 (3) (835 SE2d 610) (2019).

The trial court did not abuse its discretion in declining to exclude the evidence under Rule 403. As discussed above, evidence of Johnson's gang membership was relevant to show Johnson's motive for targeting Edwards, and its probative value was reasonably strong given the logical force of the State's motive theory.

8

See *Anglin v. State*, 302 Ga. 333, 336-337 (3) (806 SE2d 573) (2017) (gang membership relevant to motive in part because of gang code requiring retaliatory violence). And although evidence of gang membership "can be highly prejudicial," Rule 403 allows exclusion of evidence only if it carries a risk of "unfair" prejudice that substantially outweighs its probative value. Id. at 337 (3). Johnson does not explain why the evidence of his membership in a gang was not just prejudicial, but unfairly so, and the trial court was within its discretion to conclude that any risk of unfair prejudice did not substantially outweigh the significant probative value of this evidence. See *Anglin*, 302 Ga. at 336-337 (3).

(c) Johnson also claims on appeal that admitting evidence of his gang membership violated Rule 404. But Johnson does not specify which portion of Rule 404 his claim falls under, and he neither makes any argument nor cites any authority or relevant portions of the record in support of that claim, so that claim is deemed abandoned. See Supreme Court Rule 22.

3. Johnson also claims that the trial court erred in its jury

instructions. He contends that the trial court should have instructed the jury on second-degree hijacking and robbery by intimidation, which were lesser-included offenses of first-degree hijacking and armed robbery (the crimes that Johnson was convicted of). When the trial court declined to give those charges, trial counsel objected, preserving the issue for ordinary appellate review. OCGA § 24-1-103 (a) (1).

Even assuming the trial court erred in not giving these charges, any error was harmless. The only difference between first- and second-degree hijacking is the presence of a weapon. Compare OCGA § 16-5-44.1 (b) (1), with OCGA § 16-5-44.1 (b) (2). And the jury heard that Johnson admitted to the police that when he carjacked Edwards, he had a pistol in his pocket and told Edwards "don't make me whip it out." Given this uncontested evidence, it is highly probable that the jury would have found Johnson guilty of first-degree hijacking even if it also had been instructed about the second-degree offense. See *McClain v. State*, 303 Ga. 6, 9 (2) (810 SE2d 77) (2018) (an instructional error is harmless when it is

10

"highly probable that [the error] did not contribute to the verdict").

The same goes for the armed robbery. That offense has a different element — "use of an offensive weapon" — compared to robbery by intimidation. Compare OCGA § 16-8-41 (a), with OCGA § 16-8-40 (a) (2). The "'use of an offensive weapon' takes place when the weapon is used to commit a violent injury to the person of the victim or to place the victim in reasonable apprehension of immediately receiving a violent injury." *Lucky v. State*, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010) (emphasis added). See also *Johnson v. State*, 331 Ga. App. 134, 136 (1) (770 SE2d 236) (2015) (holding that use of an offensive weapon requires "creat[ing] a reasonable apprehension on the part of the [victim] that an offensive weapon was being used, regardless of whether the [victim] actually saw the weapon") (citation and punctuation omitted). And here, there was no dispute that Johnson had a gun and told Edwards, "don't make me whip it out." So the jury very likely would have concluded that Johnson used an offensive weapon to put Edwards in reasonable apprehension of receiving a violent injury and thus would have

11

found Johnson guilty of armed robbery even if it had been instructed about robbery by intimidation. Thus, the failure to give that instruction, too, was harmless.[3]

*Judgment affirmed. Peterson, CJ, Warren, PJ, Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ, concur.*

---

[3] We have assumed two instructional errors for the failure to instruct on the two lesser-included offenses. Johnson does not argue that he was prejudiced by the cumulative effect of the alleged errors by the trial court. See *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("A defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors." (cleaned up)). We have also noted that a defendant who seeks a new trial "based on the cumulative effect of errors outside of the evidentiary context . . . would do well to explain why cumulative error should be extended beyond the evidentiary context." *Jones v. State*, 314 Ga. 605, 617 (5) n.9 (878 SE2d 505) (2022). But even assuming that the question of cumulative error is properly before us, Johnson has "failed to establish that the combined prejudicial effect of these errors requires a new trial." *Park v. State*, 314 Ga. 733, 745 (4) (879 SE2d 400) (2022) (citation and punctuation omitted).