## S12A1211. SEARS v. THE STATE.
### (734 SE2d 345)

BLACKWELL, Justice.

Robert Allen Sears was tried by a Chatham County jury and convicted of the murder of Isaiah Lovett, aggravated assault, and possession of a knife during the commission of a felony. Following the denial of his motion for new trial, Sears appeals and asserts several claims of error, including that the trial court erred when it failed to merge the aggravated assault into his murder conviction. We agree with Sears that the failure to merge was error, and we vacate his conviction for aggravated assault and remand for the trial court to sentence him again. We find no merit in the other claims of error, however, and we otherwise affirm the judgment of the trial court.[1]

---

[1] The events that form the basis for the convictions occurred on August 29, 2008. Sears was indicted on November 12, 2008 and charged with malice murder, felony murder, aggravated assault, burglary, and possession of a knife during the commission of a felony. The trial commenced on November 16, 2009, and after the trial court directed a verdict of acquittal on the burglary count, the jury returned its verdict on November 19, 2009, finding Sears guilty of

1. Construed most strongly in support of the verdict, the evidence shows that Sears went on the morning of August 29, 2008 to the Savannah boarding house in which Lovett lived. Several residents overheard Sears banging on the door to Lovett's room and yelling about a lawnmower that Lovett apparently had borrowed. A neighbor saw Lovett emerge from his room, and he observed Lovett and Sears engaged in a physical altercation, which left Lovett bleeding profusely from several stab wounds. Lovett subsequently died of those stab wounds. Although no one testified that he saw Sears with a knife during the altercation, Sears's shirt was covered in blood afterwards, and he was seen with a knife as he fled from the boarding house.

When Sears was apprehended by law enforcement later that morning, the blood of the victim was found on his hat, and lacerations consistent with the stabbing of Lovett were observed on his hands. While Sears was in jail, he told another inmate that he killed Lovett, and he said that he hid the knife, as well as the shirt that he had been wearing at the time of the stabbing, inside a shed on property on which he had been staying. The inmate informed law enforcement of the confession, and when police officers went to the shed, they found the knife and shirt, on both of which was Lovett's blood.[2] The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Sears was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2. We turn now to the contention that the trial court erred when it failed to excuse a certain prospective juror for cause. During voir dire, this prospective juror said that she "tend[ed] to put a lot of weight on what law enforcement people, what their opinions are."

---

felony murder, aggravated assault, and possession of a knife during the commission of a felony. The jury acquitted Sears of malice murder. Sears was sentenced to imprisonment for life for felony murder, imprisonment for a consecutive term of 20 years for aggravated assault, and imprisonment for a consecutive term of five years for possession of a knife during the commission of a felony. Sears filed a motion for new trial on November 20, 2009, and he amended it on June 27, 2011. The trial court denied the motion for new trial as amended on November 15, 2011. Sears timely filed his notice of appeal on December 14, 2011, and the case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

[2] At trial, Sears testified in his own defense, and he claimed that Lovett's neighbor, Ramel Roberson, actually killed Lovett. Sears admitted that he went to the boarding house on the morning of the stabbing to get a lawnmower that he had loaned to Lovett. But by Sears's account, as he was knocking on Lovett's door, Roberson came over and started yelling about some money that Lovett owed Roberson. Lovett then came out of his room with a knife, Sears said, and when Sears knocked the knife from Lovett's hand, Roberson picked it up and stabbed Lovett. Sears claimed that Roberson asked him to take the knife and hide it in his shed. It was for the jury, of course, to assess the credibility of this testimony. See *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010).

She also said that the criminal justice system has numerous "loop-holes" that allow guilty persons to "get[ ] off scot free just because one little thing wasn't done," that she "sometimes think[s] that there are more rights for criminals . . . than . . . victims," and that the criminal justice system involves a "revolving door" by which persons are released from prison only to commit crimes again. Whether a pro-spective juror should be excused for cause is committed to the discretion of the trial court, and as we have acknowledged before, the discretion of the trial court in this respect is broad. *Sharpe v. State*, 288 Ga. 565, 566 (3) (707 SE2d 338) (2011). See also *Harrison v. State*, 309 Ga. App. 454, 454 (1) (711 SE2d 35) (2011) ("A trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks."). We review the failure to excuse a prospective juror for cause only for an abuse of discretion, *Herrera v. State*, 288 Ga. 231, 235 (6) (702 SE2d 854) (2010), and we see no abuse of discretion here.

A trial court should excuse a prospective juror for cause when it appears that the juror "holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence." *Cade v. State*, 289 Ga. 805, 807 (3) (716 SE2d 196) (2011) (citation omitted). That a prospective juror has expressed a generalized belief about the credibility of law enforcement officers does not require that she be excused for cause, so long as the juror appears willing and able to fairly and impartially consider the evidence, her generalized belief notwithstanding. See, e.g., *Foster v. State*, 248 Ga. 409, 410-411 (3) (283 SE2d 873) (1981) (that prospective juror indicated that he would tend to believe the testimony of law enforcement officers whom he had known for his whole life over the testimony of persons whom he did not know did not require that he be excused for cause, especially where he assured that he would impartially and fairly evaluate the testimony given at trial); *Tennon v. State*, 235 Ga. 594, 596 (2) (220 SE2d 914) (1975) (that prospective jurors expressed a "belief in the truthfulness of police officers" did not require that they be excused for cause). Likewise, that a prospective juror has expressed some generalized concerns about the criminal justice system does not require that she be excused for cause. Cf. *Rice v. State*, 292 Ga. 191, 195 (3) (b) (733 SE2d 755) (2012) (that prospective juror expressed frustration about prosecu-tion of crimes of which his sister was a victim did not require that the juror be excused for cause).

The prospective juror at issue in this case never indicated that she had formed a fixed and definite opinion about whether Sears was guilty of the crimes with which he was charged. See *Hargett v. State*, 285 Ga. 82, 84 (3) (b) (674 SE2d 261) (2009). To the contrary, she explained that she "believe[d] in being true and fair and honest and trying to judge things accordingly . . . ." For these reasons, we cannot say that the trial court abused its broad discretion when it declined to excuse this prospective juror for cause. *Hubbard v. State*, 285 Ga. 791, 793 (2) (683 SE2d 602) (2009); *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998).

3. We next consider the contention that a mistrial was necessary after a detective testified that, "when I read [Sears] his constitutional rights, he invoked[,] so he refused . . . he refused to give a statement as to what happened." On appeal, Sears argues that this testimony amounted to an improper comment upon his invocation of the right to remain silent and that it was sufficiently prejudicial to require a mistrial. But at trial, Sears said nothing about a comment upon his silence. Instead, Sears told the trial court that a mistrial was necessary because the detective had improperly commented upon his invocation of the right to counsel. For this reason, whether Sears adequately preserved the claim of error that he urges on appeal — that a mistrial was required by an improper comment upon his silence — is doubtful.[3] See *Wallace v. State*, 272 Ga. 501, 503 (2) (530 SE2d 721) (2000) (defendant failed to preserve claim that testimony improperly commented upon his exercise of right to remain silent where he failed to object on that ground at trial and instead objected only that the testimony was "unfair" and "prejudicial"); see also *Allen v. State*, 272 Ga. 513, 515 (5) (530 SE2d 186) (2000).

Nevertheless, even assuming that this claim of error was adequately preserved, it is without merit. It is true enough that testimony commenting upon the silence of the accused is, generally speaking, "far more prejudicial than probative." *Patterson v. State*, 285 Ga. 597, 602 (5) (b) (679 SE2d 716) (2009). But the improper admission of prejudicial testimony does not always require a mistrial. See *Allen*, 272 Ga. at 515 (5). A motion for mistrial is committed to the discretion of the trial court, *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011), and ordinarily, the denial of such a motion amounts to an

---

[3] Sears asserts that, if his lawyer failed to renew the motion for mistrial and thereby failed to preserve the denial of the motion for appellate review, the lawyer rendered ineffective assistance. But the preservation problem is not that the lawyer failed to renew the motion, it is that the motion was based at trial on grounds other than those urged on appeal. And in any event, the trial court did not abuse its discretion when it denied the motion, see infra, so any shortcomings of the lawyer with respect to the motion do not amount to ineffective assistance.

abuse of discretion only when "it is apparent that a mistrial is essential to the preservation of the right to a fair trial." *Brinson v. State*, 289 Ga. 551, 552 (2) (713 SE2d 862) (2011) (citation and punctuation omitted). Whether an improper comment upon the silence of the accused was harmful enough to imperil the fairness of the proceedings and to require a mistrial depends upon a number of circumstances, including the context of the improper comment, the prejudice generated by the comment, and the strength of the evidence of guilt adduced at trial. See *Allen*, 272 Ga. at 515-516 (5).

Here, the detective made the comment at issue in response to questions about his awareness of any threats that might have been directed to Sears. These questions were put to the detective by defense counsel, and the prosecuting attorney asked no questions about Sears invoking his rights and did not attempt to make any use of the testimony that Sears had invoked his rights. Moreover, the evidence of guilt in this case was overwhelming. The jury heard the testimony of an eyewitness to the stabbing, as well as the testimony of witnesses who overheard Sears confronting the victim on the morning of the stabbing. The jury also heard the testimony of the inmate to whom Sears confessed, testimony that was corroborated by evidence that the inmate directed police officers to the location where the knife and bloody shirt had been stashed. And Sears himself admitted at trial that he was present when the victim was stabbed, that he knocked the knife from the hand of the victim, and that he hid the knife afterwards. In these circumstances, we conclude that any improper comment upon Sears having invoked his right to remain silent was harmless beyond a reasonable doubt, and no mistrial, therefore, was required. See *Collins v. State*, 289 Ga. 666, 668-669 (2) (715 SE2d 136) (2011); *Allen*, 272 Ga. at 516 (5).

4. We turn next to the claim that the trial court erred when it failed to require the jury to specify the predicate felony upon which it found Sears guilty of felony murder and possession of a knife during the commission of a felony. Sears reasons that he was indicted for two predicate felonies — burglary and aggravated assault — but the trial court directed a verdict of acquittal on the burglary count, so the jury was authorized to consider only aggravated assault as a predicate. Sears argues that, because the trial court failed to require the jury to specify the predicate on which it based its verdict as to felony murder and possession of a knife, we cannot know that the jury did not base its verdict on burglary, and his felony murder and possession of a knife convictions must be reversed. See *Thompson v. State*, 271 Ga. 105, 108 (2) (519 SE2d 434) (1999) (where conviction for one of several underlying felonies is reversed on appeal, and jury failed to specify

the predicate felony on which its guilty verdict as to felony murder was based, felony murder conviction must be reversed). We disagree.

When the trial court directed a verdict of acquittal on the burglary charge, it instructed the jury that it was "removing count one, burglary, from your consideration," and it charged that "you are not to entertain count one in this indictment." Moreover, the trial court did not instruct the jury on the elements of burglary, and no reference to burglary appears on the verdict form. In these circumstances, we see no possibility that the jury might have based its verdict as to felony murder and possession of a knife during the commission of a felony upon burglary, and we find no error in the failure of the trial court to require the jury to specify a predicate felony for its verdict. See *Miller v. State*, 275 Ga. 730, 738 (6) (571 SE2d 788) (2002).

5. We now consider the contention that Sears was deprived at trial of the effective assistance of counsel. To prevail on his claim of ineffective assistance, Sears must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Sears must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. See id. at 687-688 (III) (A); see also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Sears must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B); see also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Sears has failed to carry his burden.

(a) In Division 3, we considered whether the trial court erred when it denied a motion for mistrial that followed testimony by a detective on cross-examination that Sears had "invoked" and had "refused to give a statement as to what happened." Later in the cross-examination of the same detective, defense counsel asked a question about the extent of the investigation undertaken by the detective, and the detective responded that, after Sears was taken to the police station, "I read him his constitutional rights. He invoked and we . . . collected all his clothing and he was transported out to the jail." Upon this second mention of Sears having "invoked," his lawyer

made no objection at all and did not move again for a mistrial. Sears claims that the failure to do something in response to the second mention of him having "invoked" was ineffective assistance. We disagree.

As we explained in Division 3, an improper comment upon an invocation of the right to remain silent sometimes may be harmless, and in this case, the first mention of Sears having "invoked" was harmless and did not require a mistrial. The second mention of Sears having "invoked" was more cryptic than the first, which explicitly linked the invocation to Sears refusing to give a statement, and we fail to see how it could be harmful when the first was not. Because Sears has not shown that the second mention of him having "invoked" was harmful, he has failed to show that he was deprived of the effective assistance of counsel with respect to the second mention. See *Allen*, 272 Ga. at 516 (6) (a) ("Based on our holding that any error in the admission of the investigator's testimony [that amounted to a comment upon the silence of the accused] was harmless, trial counsel's failure to object to this testimony constitutes neither deficient performance nor prejudice to [the defendant].").

(b) The State called a pathologist to testify as an expert at trial, and on direct examination, the prosecuting attorney asked the pathologist whether he had "a bias one way or another," considering that the pathologist was employed by the Georgia Bureau of Investigation. The pathologist responded that "I have bias to the truth." Sears contends that this testimony amounts to improper bolstering and that his lawyer should have objected. At the hearing on the motion for new trial, however, the lawyer explained that he did not object to this testimony because he did not think it was very harmful. Moreover, a reasonable lawyer might have worried that objecting would only draw attention to the testimony. See *Atkins v. State*, 274 Ga. 103, 105 (5) (549 SE2d 356) (2001). Given the deference that we owe to the reasonable judgments of trial counsel, *McCutchen v. State*, 276 Ga. 532, 533 (579 SE2d 732) (2003), and considering that Sears has failed to show that he was harmed in any meaningful way by this testimony, he has failed to carry his burden to show that the failure of his lawyer to object to this testimony amounts to ineffective assistance.

(c) When Sears testified at trial, his lawyer asked him on direct examination about his prior convictions. From the discovery that the lawyer had obtained from the State and reviewed with Sears before trial, the lawyer knew that Sears had some prior convictions and that, if Sears did not discuss them on direct examination, the prosecuting attorney might bring them out on cross-examination. So, the lawyer had discussed the prior convictions indicated by discovery with Sears and had prepared him to testify about them. At trial, however, Sears

volunteered on direct examination that he not only had the convictions noted in the discovery, but also that he had numerous other convictions. Sears contends that his lawyer failed to adequately prepare him to testify with respect to his prior convictions.

At the hearing on the motion for new trial, the lawyer explained that he was surprised when Sears volunteered at trial that he had been convicted of "a whole series of other charges that we didn't have proof of[.]"[4] There is nothing to suggest that the lawyer should have known about these additional convictions or should have anticipated that Sears would bring them up for the first time while testifying. Because we are required to evaluate the conduct of Sears's trial lawyer from his perspective at the time and "to eliminate the distorting effects of hindsight," see *Johnson v. State*, 286 Ga. 787, 791 (2) (692 SE2d 575) (2010), we conclude that the performance of the lawyer as it relates to preparing Sears to testify about his prior convictions was not deficient.[5] Compare *Dixon v. State*, 268 Ga. App. 215, 220-221 (2) (b) (601 SE2d 748) (2004) (trial lawyer's performance was deficient because she introduced evidence of a prior conviction based on her mistaken belief that it was already in evidence; but deficiency still did not amount to ineffective assistance because evidence of guilt was overwhelming).

(d) Sears claims that his lawyer should have requested a jury charge on good character evidence, inasmuch as one witness testified that Sears's reputation for peacefulness was good. Even assuming that the lawyer rendered deficient performance when he failed to request such a charge, Sears must show a reasonable likelihood that, absent the deficiency, the outcome of his trial would have been different. He has failed to do so.

In *Lucas v. State*, 279 Ga. 175 (611 SE2d 55) (2005), we explained:

A proper instruction should be given in every case where the accused puts his character in issue; but in the absence of a timely request, an omission to give a specific charge on the

---

[4] Sears testified that, in addition to forgery and theft, he had been convicted of "possession of crack cocaine, trafficking crack cocaine, DUIs, things of that nature. Nothing serious." (Transcript; Vol. 9; p. 440)

[5] In any event, before Sears volunteered the information about his driving under the influence and drug-related convictions, he already had attempted to mitigate the seriousness of his forgery and theft convictions by explaining that he committed those crimes only because he was "strung out on drugs" and needed to "support [his] crack habit." Given that Sears had already informed the jurors of his significant drug problems, it is difficult to see how he was prejudiced by his later testimony that his criminal record included the drug-related convictions. And given the testimony about numerous felony convictions, we fail to see how Sears was additionally prejudiced by admission of evidence that he also had been convicted of driving while intoxicated.

> subject will not require a new trial. It is only in exceptional cases where the court fails to charge relative[ ] to the good character of the accused that a new trial should be granted.

*Id.* at 176 (2) (citation omitted). *Lucas* was not an "exceptional case" because the good character evidence there was countered by evidence of bad character and the prior convictions of the defendant. The same is true here. "Considering the overwhelming weight of the evidence . . . and the adequate instructions given to the jury on the credibility of witnesses," Sears has not shown a reasonable likelihood that, absent his lawyer's failure to request a charge on evidence of good character, the result of the trial would have been different. *Id.* at 176-177 (2).[6]

(e) Finally, Sears claims that his lawyer was ineffective with respect to his cross-examination of the inmate who testified that Sears had confessed to stabbing Lovett. First, Sears says that his lawyer should have elicited testimony from the inmate that the inmate had received a favorable sentence on a recent conviction as a result of his cooperation with the prosecution of Sears. But even at the hearing on his motion for a new trial, Sears failed to produce any evidence that the inmate received a favorable sentence because he agreed to cooperate with the State. And while Sears claims that his lawyer should have asked the inmate about his pro se attempts to withdraw his guilty plea and receive favorable treatment in exchange for his willingness to testify, the record shows that Sears's lawyer did ask the inmate about his pro se pleadings. Likewise, Sears also claims that his lawyer should have asked the inmate about his numerous prior convictions, but the record shows that his lawyer did ask the inmate about convictions that were not too old to be admitted pursuant to OCGA § 24-9-84.1 (b). And Sears has not come forward with any legal theory under which the remaining convictions about which his lawyer did not ask would have been admissible. The record does not support the claim of ineffective assistance with respect to the cross-examination of the inmate, and that claim, therefore, provides no basis for reversing the judgment of conviction. See *Cruz v. State*, 305 Ga. App. 805, 812 (3) (d) (700 SE2d 631) (2010).

---

[6] In addition, to the extent that Sears has shown, or that we have assumed, that his lawyer's assistance was deficient because he failed to object to the detective's testimony that Sears "invoked" and because he failed to request a jury charge on good character evidence, we also find that the *cumulative* effect of any such deficiencies did not create a reasonable likelihood that the outcome of the trial would have been different but for any deficient performance. *Schofield v. Holsey*, 281 Ga. 809, 811 (II), n. 1 (642 SE2d 56) (2007).

6. Sears also claims that the trial court erred when it failed to merge the aggravated assault into his conviction for felony murder, and when it imposed a sentence of 20 years of imprisonment on the aggravated assault conviction, to be served consecutive to the sentence of life in prison for the felony murder conviction. The indictment charged Sears with felony murder by causing the death of Lovett "while in the commission of a felony, to wit: burglary and aggravated assault and possession of a knife during the commission of those crimes . . . ." The aggravated assault count charged Sears with assaulting Lovett with a knife, an object that, when used offensively against another, is likely to result in serious injury.

"When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." *Culpepper v. State*, 289 Ga. 736, 737 (2) (715 SE2d 155) (2011) (citation omitted); see also OCGA § 16-1-7 (a) (1) (prohibiting conviction of more than one crime if one crime is included in another). The State suggests that Sears committed two separate aggravated assaults, one that caused non-fatal injuries and was the basis for the aggravated assault conviction, and one that caused fatal injuries and was the basis for the felony murder conviction.[7] But as in *Green v. State*, 283 Ga. 126, 130 (2) (657 SE2d 221) (2008), neither the indictment nor the court's charge to the jury specified that Sears was being tried for two separate aggravated assaults, and so we cannot conclude that the jury found Sears guilty of one aggravated assault to support the felony murder conviction and of a separate aggravated assault to support the independent aggravated assault conviction. As a result, Sears's conviction for aggravated assault must be vacated because it merged into the

---

[7] Indeed, a separate judgment of conviction and sentence for aggravated assault is authorized "if a defendant commits an aggravated assault independent of the act which caused the victim's death." *Coleman v. State*, 286 Ga. 291, 295 (687 SE2d 427) (2009) (citation omitted). In determining whether there was an aggravated assault independent of the fatal assault, we consider both the order and timing of the assaults.

> When a victim suffers multiple wounds inflicted in quick succession, each infliction of injury does not constitute a separate assault. However, a separate judgment of conviction and sentence is authorized if a defendant commits an aggravated assault independent of the act which caused the victim's death. When a series of stab wounds are separated by a "deliberate interval" and a non-fatal injury is sustained prior to the interval and a fatal injury sustained after the interval, the earlier, non-fatal infliction of injury can serve to support a conviction for aggravated assault.

*Culpepper*, 289 Ga. at 738-739 (2) (a) (citations and punctuation omitted). Here, however, there was no evidence of a "deliberate interval" separating the infliction of any non-fatal wounds and any fatal wounds. Instead, the undisputed evidence was that the wounds were delivered in quick succession.

conviction for felony murder, the sentence for aggravated assault must be vacated, and the case must be remanded to the trial court for resentencing. *Mikell v. State*, 286 Ga. 722, 724-725 (3) (690 SE2d 858) (2010); see also *Coleman*, 286 Ga. at 295 (3).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*

DECIDED NOVEMBER 19, 2012.

*Steven L. Sparger*, for appellant.
*Larry Chisolm, District Attorney, Reginald C. Martin, David E. Perry, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.