S12A1857. BRADLEY v. THE STATE.
(740 SE2d 100)

BLACKWELL, Justice.

Tobee Bradley was tried by a Lowndes County jury and convicted of murder, aggravated assault, armed robbery, and three counts of possession of a firearm during the commission of a crime. Bradley appeals, contending that the evidence is insufficient to sustain his convictions and that several of the crimes of which he was convicted should have merged. Bradley also claims that the trial court erred when it excluded evidence that others might have been involved in the crimes, when it allowed an audio recording of a conversation between Bradley and a police informant to go out with the jury during its deliberations, and when it admitted the prior consistent statements of the police informant. In addition, Bradley contends that he was denied the effective assistance of counsel at trial. Upon our review of the record and briefs, we conclude that the trial court erred with respect to merger, and for that reason, we must vacate the convictions and sentences for aggravated assault and one count of possession of a firearm during the commission of a crime. We find no other error, however, and we otherwise affirm the judgment below.[1]

_____

[1] The events that form the basis for the convictions occurred on October 15, 2003. Bradley was indicted on July 29, 2005 and charged with malice murder, aggravated assault, armed robbery, and three counts of possession of a firearm during the commission of a crime. His trial commenced on November 13, 2006, and the jury returned its verdict on November 15, 2006, finding Bradley guilty on all counts. On December 11, 2006, the trial court sentenced Bradley to life imprisonment for malice murder, a consecutive term of twenty years for aggravated

1. Viewed in the light most favorable to the verdict, the evidence shows that on the afternoon of October 15, 2003, two men ran into the AB Food Mart in Valdosta, where Natavarlal Patel and his son Bobby worked. One of these men, who was wearing a mask, fired three shots from a .38-caliber revolver, killing Natavarlal, who was at the lottery ticket stand, and injuring Bobby, who was behind the cash register. The masked man then fled the scene. The second man walked behind the counter and took approximately $1,500 from a cigar box, and he then fled the scene as well. Bobby Patel provided a description of the men, including their height, build, and race. His description of the shooter was consistent with Bradley, and his description of the second man was consistent with Rogers Pounder, whom Bradley knew as "Jay." One week later, Valdosta police officers confiscated a .38-caliber revolver from Michael Thomas, whom they suspected of selling drugs. A forensic criminologist examined the revolver, as well as the metal jackets and bullets found at the crime scene, and he determined that the confiscated revolver was the weapon used in the crimes.

Approximately two years later, a woman contacted the Valdosta Police Department and told officers that she overheard Bradley say that he had robbed the AB Food Mart and that he had given the weapon he used in the robbery to "Mike Thomas." The police officers asked the woman to speak directly with Bradley to get more information, and she agreed to do so. In her first conversation with Bradley, he admitted that he went to the food store on the day of the crimes and saw a cigar box that was "full of cash." He said that he and a man named "Jay" agreed to go back and rob the store later that day "because damn near every cop in Valdosta was at the courthouse for [the mayor's] funeral[,]" that he wore a mask into the store, that he shot the "old man" while he was hanging up lottery tickets and fired several more shots before running out of the store, that he later met up with "Jay" to split the money, and that he was upset with "Jay" because he had already "been in" the money by the time they met and Bradley did not receive as much money as he thought he should have. In a second conversation with Bradley, during which the informant wore a wire, Bradley provided the same information, adding that he

assault, another consecutive term of twenty years for armed robbery, and consecutive terms of five years for each of the counts of possession of a firearm during the commission of a crime. Bradley filed a motion for new trial on January 5, 2007, and he amended it on August 15, 2011 and again on April 24, 2012. The trial court denied the motion for new trial as amended on May 25, 2012. Bradley timely filed his notice of appeal on June 13, 2012, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

fired a total of three shots during the robbery and describing the mask that he wore during the robbery.[2]

Police officers identified Pounder as a man known in the neighborhood as "Jay," and Pounder later admitted to his role in the crimes. At trial, Pounder testified that Bradley approached him about robbing the AB Food Mart, that when they went to the store later that day, Bradley immediately started shooting and then ran out of the store, that Pounder went behind the counter and took approximately $1,500 from a cigar box, that he later met Bradley but gave him only $600, and that Bradley was upset and told him that he thought he was "supposed to get more than that."

(a) Although Bradley claims that the evidence suggests that other people may have been involved in the crimes, we must view the evidence in the light most favorable to the verdict and leave questions of credibility and the resolution of conflicts in the evidence to the jury. As a result, we conclude that the evidence in this case was sufficient to authorize a rational trier of fact to find Bradley guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Bradley also argues that the trial court should have merged several of his convictions. Bradley was convicted of three counts of possession of a firearm during the commission of a crime, with one possession charge stemming from each of the other crimes of which he was convicted — the murder of Natavarlal Patel, the aggravated assault of Bobby Patel, and the armed robbery of Bobby Patel. But this Court has held that OCGA § 16-11-106 (b) does not necessarily authorize one possession charge for every predicate offense. See *State v. Marlowe*, 277 Ga. 383, 386 (2) (b) (589 SE2d 69) (2003). Instead,

> where multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1), and additionally once for firearm possession for every crime enumerated in subsections (b) (2) through (5).

Id. at 386 (2) (c); see also *Grell v. State*, 291 Ga. 615, 616-617 (1) (732 SE2d 741) (2012).

---

[2] Bradley's description of the mask was consistent with a mask found by police officers near the food store about two days after the robbery. Bobby Patel had identified that mask as being like the mask worn by the shooter.

In this case, there were two victims, and none of the crimes are of the type enumerated in subsections (2) through (5) of OCGA § 16-11-106 (b). As a result, Bradley properly could be convicted and sentenced for two of the counts of possession of a firearm: the possession count in which Natavarlal was the victim and one of the possession counts in which Bobby was the victim. As acknowledged by the State, the other possession conviction — for which Bradley received a five-year consecutive sentence — must be vacated. See *Abdullah v. State*, 284 Ga. 399, 401 (4) (667 SE2d 584) (2008); see also *Grell*, 291 Ga. at 617 (1).

(c) We also find that the trial court erred in failing to merge Bradley's conviction for the aggravated assault of Bobby Patel with his conviction for the armed robbery of Bobby Patel. We have held "that there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery." *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) (finding that the "deadly weapon" requirement of aggravated assault with a deadly weapon is the equivalent of the "offensive weapon" requirement of armed robbery, and relying on *Lucky v. State*, 286 Ga. 478, 481 (689 SE2d 825) (2010), which established that the assault requirement of aggravated assault is the equivalent of the "use of an offensive weapon" requirement of armed robbery). And "[b]ecause aggravated assault [with a deadly weapon] does not require proof of any element that armed robbery does not, convictions for both offenses will merge — but only if the crimes are part of the same 'act or transaction.' " *Thomas v. State*, 289 Ga. 877, 880 (3) (717 SE2d 187) (2011) (citations omitted).

Here, the aggravated assault, as charged in the indictment, occurred when Bradley assaulted Bobby Patel with the .38-caliber revolver. The State argues that the aggravated assault was completed when Bradley fired the weapon and then ran out of the store and that only then did the armed robbery occur as a separate transaction. But the armed robbery could not have occurred exclusively after Bradley fled from the store because the undisputed evidence was that Pounder did not have a weapon. Instead, the armed robbery must have begun when Bradley pointed the .38-caliber revolver at Bobby for the purpose of robbing the store, during which time the aggravated assault also occurred, and the armed robbery concluded immediately thereafter when Pounder took the money out of the cigar box. Because the aggravated assault of Bobby arose out of the same "act or transaction" as the armed robbery of Bobby, the aggravated assault was an offense included in the armed robbery conviction, and Bradley's conviction and sentence for aggravated assault also must be vacated. See *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012); *Thomas*, 289 Ga. at 880 (3).

2. Bradley claims that the trial court erred when it excluded statements suggesting that other people may have been involved in the crimes. As to the first statement, a girlfriend of Hashim Walker apparently was available to testify at trial that Walker told her that he robbed the "Indian store" and that he had shot someone.[3] As to the second statement, which is only a partial statement, a middle school teacher apparently was available to testify that she heard G. M., who was one of her students, say that Bradley "didn't shoot him because I was the . . . ." The trial court excluded both of these statements from trial after finding that neither statement possessed sufficient indicia of reliability.

First, Bradley claims that the statements were admissible under the necessity exception to the hearsay rule.[4] But Bradley has failed to establish that the statements possessed "particularized guarantees of trustworthiness" as required by that exception. See *Navarrete v. State*, 283 Ga. 156, 159 (2) (656 SE2d 814) (2008). In determining whether a statement is sufficiently trustworthy, the trial court was required to consider the totality of the circumstances surrounding the making of the declaration, and "[o]nly where the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross examination would be of marginal utility does the hearsay rule not bar admission of a hearsay statement at trial." *Phillips v. State*, 275 Ga. 595, 597 (4) (571 SE2d 361) (2002) (punctuation and footnote omitted).

Here, the trial court concluded that the statements did not bear sufficient indicia of reliability, and this finding is supported by the evidence. In fact, Bradley's argument at trial was that many people in the community were falsely claiming to have committed the crimes, and that Bradley's confession was similarly fabricated. The incomplete statement of G. M. is particularly untrustworthy because the teacher was not able to provide the rest of the statement and Bradley did not even suggest how the boy might have been in the position to know that Bradley "didn't shoot him . . . ." And while Bradley claims that Walker's statement was trustworthy because the police investigated Walker to determine if he was involved in the

---

[3] It is not clear from the record whether the statement was that Walker had shot someone during the robbery of the "Indian store" or whether he had shot someone in a different robbery.

[4] See former OCGA § 24-3-1 (b) ("Hearsay evidence is admitted only in specified cases from necessity."). Under the new rules of evidence, OCGA § 24-8-807 provides for the admission, under certain conditions, of statements "not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness." We do not consider whether the statements at issue would be admissible under the new rules of evidence.

crimes,[5] the police ultimately determined that Walker was not a suspect. Compare *Green v. Georgia*, 442 U. S. 95, 97 (99 SC 2150, 60 LE2d 738) (1979) (admission of third party was sufficiently reliable that State had used it against the third party at his own trial and asked for a sentence of death based upon it). It is not clear from the record why the police determined that Walker's alleged confession was unreliable, but it may have had something to do with its lack of detail, the absence of corroborating evidence linking Walker to the crimes, or the fact that Bobby Patel described the shooter as being five feet and six inches tall but Walker stood at six feet. In any event, especially given Bradley's own acknowledgment that many people in Valdosta were falsely claiming involvement in the crimes, we find that the trial court did not abuse its discretion when it concluded that the statements allegedly made by Walker and G. M. were not trustworthy. See *Bragg v. State*, 279 Ga. 156, 158 (2) (611 SE2d 17) (2005); *Culmer v. State*, 282 Ga. 330, 331 (2) (647 SE2d 30) (2007).

Bradley also asserts that the trial court violated his rights to due process and a fair trial when it excluded these statements. Bradley cites *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973), for the proposition that due process requires the admission of evidence of a third party's confession even where such admission would otherwise violate the rules of evidence. But in *Chambers*, the Supreme Court expressly limited its holding to the facts and circumstances of that case and also found that the third party's confession bore "persuasive assurances of trustworthiness" and "was critical to [the] defense." Id. at 302 (III) (B); see also *Green*, 442 U. S. at 97 (hearsay declaration against the penal interest of a co-conspirator is admissible during the punishment phase of a death penalty case where that declaration is "highly relevant to a critical issue . . . and substantial reasons existed to assume its reliability"). Here, as discussed above, the trial court considered the reliability of the statements, and it did not abuse its discretion in determining that they were not sufficiently reliable to be admitted. See *Grell*, 291 Ga. at 618 (2).[6]

---

[5] Bradley also claims that the trial court erred when it refused to admit a certified copy of a search warrant and supporting affidavit that were used to seize DNA evidence from Walker. But those documents contained the same information provided by Walker's girlfriend about his alleged confession, and the trial court did not err in refusing to admit those documents for the same reasons as it refused to allow the girlfriend to testify about Walker's alleged confession.

[6] In addition, Bradley claims that the statements were admissible because they were against the declarants' penal interest, but "declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial." *Grell*, 291 Ga. at 617 (2) (citations and punctuation omitted); *Messick v. State*, 276 Ga. 528, 529 (3) (580 SE2d 213)

3. Bradley contends that the trial court erred when it allowed an audio recording of a conversation between Bradley and the police informant to go out with the jury during its deliberations. Bradley claims that this violated the continuing witness rule because it placed undue emphasis on the recording to have it played once during trial and then again during jury deliberations. See *Bridges v. State*, 279 Ga. 351, 353 (2) (613 SE2d 621) (2005). But Bradley has not presented any evidence that the jury, in fact, replayed the recording during its deliberations or even that it had the equipment necessary to do so. While Bradley's trial lawyer testified at the hearing on Bradley's motion for new trial that he did not know if the recording was played in the jury room, the prosecuting attorney testified that it was his practice to include such a recording with the other admitted evidence that went to the jury room but not to send the equipment to play the recording. Compare id. (trial court sent both tape recordings and a tape player to the jury room). And here, the trial court found, as a matter of fact, that the jury did *not* replay the recording in the jury room. Based on the evidence presented at the hearing on the motion for new trial and the trial court's own recollection of whether the jury had the equipment necessary to play the recording in the jury room, this finding was not clearly erroneous. As a result, this enumeration of error is without merit. See also *Kemp v. State*, 226 Ga. 506, 507 (2) (175 SE2d 869) (1970) ("The burden is on him who asserts error to show it affirmatively by the record.") (citation and punctuation omitted).

4. Bradley contends that the trial court erred when it allowed the State to introduce prior consistent statements of the police informant about her conversations with Bradley. But Bradley objected at trial only to her testimony about what Bradley said in the second conversation, which was recorded, and even then, Bradley objected only upon best evidence grounds. Bradley did not make an objection on the grounds he now asserts, and he has, therefore, failed to preserve this claim on appeal. See *Sears v. State*, 292 Ga. at 67 (3).

5. Finally, we consider Bradley's claim that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Bradley must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington,* 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To show that the performance of his lawyer was deficient, Bradley must prove that his lawyer

---

(2003). Under the new rules of evidence, the admission of a "statement against interest" is controlled by OCGA § 24-8-804 (b) (3).

performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to show that he was prejudiced by the performance of his lawyer, Bradley must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, though not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Bradley has failed to carry his burden.

First, Bradley complains that his trial lawyer was unsuccessful in convincing the trial court to admit evidence of the statements allegedly made by Walker and G. M., as discussed herein in Division 2. At trial, Bradley's lawyer argued that the statements should be admitted because they showed that numerous people were falsely claiming to have been involved in the shooting and that the statements were evidence that Bradley's claims to have been involved in the shooting were similarly fabricated.[7] Although Bradley now claims that his lawyer should have made other arguments about the admissibility of the statements of Walker and G. M., those arguments would have been meritless, as discussed in Division 2.

Similarly, Bradley claims that his trial lawyer was ineffective because he failed to make proper objections when the trial court allowed the tape recording of his conversation with the informant to go out with the jury during its deliberations. But, as discussed in Division 3, such an objection would have been meritless. And the failure to make a meritless objection cannot amount to ineffective assistance. See *Wesley v. State*, 286 Ga. 355, 356 (3) (b) (689 SE2d 280) (2010).

Finally, Bradley asserts that his trial lawyer was ineffective when he allowed the State to present what he alleges are prior consistent statements of the informant about her conversations with Bradley. But the record shows that there were several inconsistencies between the informant's testimony and her prior statements, that these inconsistencies likely served to benefit Bradley, and that the admission of the prior statements would have been a reasonable trial strategy. For example, the informant testified at trial that she first

---

[7] We note that, in addition to the statements made by Bradley to the informant, Bradley also made an incriminating statement to the police that was suppressed by the trial court.

became aware of Bradley's role in the crimes when she overheard him confess to her son while she stood outside the room; but in her prior statement about that confession, the informant claims to have been an active participant in the conversation — sitting with Bradley and asking him questions about his role and for details about the crime. The prior statement supported the defense theory that the informant was not a passive recipient of an overheard confession but rather was a frequent police informant who wanted monetary benefits in exchange for providing the police with evidence against Bradley and that she had to "push and pull" Bradley in order to coax out the confession. Another difference between the informant's testimony and her prior statements concerned the timing of when Bradley purportedly gave the revolver to Thomas. At trial, the informant testified on direct examination only that Bradley said that he gave the revolver to Thomas. But during cross-examination, the informant acknowledged that in her recorded conversation with Bradley — which Bradley now claims is an inadmissible prior consistent statement of the informant[8] — Bradley says that he gave the revolver to Thomas *two months* after the shooting. This evidence supported Bradley's defense that his confession was fabricated and that he provided (somewhat inaccurate) details that he had heard "on the street," inasmuch as police officers indeed recovered the weapon from Thomas, but they did so approximately one week after the crimes. The admission of the prior statements allowed Bradley's lawyer to emphasize these differences, and the lawyer acknowledged at the hearing on the motion for new trial that these differences supported the defense.[9] Because it

---

[8] Bradley does not point to any statement made by the informant in the recording that would have bolstered the informant's trial testimony. Instead, the undisputed purpose of admitting the recording was to allow the jury to hear Bradley's confession — not to hear the words of the informant. And because a prior consistent statement of a testifying witness is not hearsay, but is inadmissible only where it bolsters the testimony of the witness, Bradley has not shown that the recording of his conversation with the informant is an inadmissible prior consistent statement. See *Stephens v. State*, 289 Ga. 758, 760 (1) (b) (716 SE2d 154) (2011). Under the new rules of evidence, the admission of prior consistent statements is controlled by OCGA §§ 24-6-613 (c) and 24-8-801 (d) (1) (A). See Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence (2013-2014 ed.); see also Paul S. Milich, "Prior Consistent Statements," Courtroom Handbook on Georgia Evidence 8 (2012 ed.) (under the old (and new) rules of evidence, prior consistent statements of a testifying witness "are inadmissible if their only purpose is merely bolstering the witness's credibility when it has not been attacked."). We do not consider whether the recording would be an inadmissible prior consistent statement under the new rules of evidence.

[9] Although Bradley's lawyer previously had been unable to articulate a strategic reason for his failure to object to the admission of the prior statements on the grounds that they were prior consistent statements of the informant, when we assess the performance of counsel, "we must remember that our inquiry properly is focused on what the lawyer did or did not do, not what he thought or did not think." *Powell v. State*, 291 Ga. 743, 748 (2) (b), n. 2 (733 SE2d 294) (2012). See also *Harrington v. Richter*, ___ U. S. ___ (IV) (A) (1) (131 SC 770, 178 LE2d 624) (2011) (a

was a reasonable trial strategy to allow the admission of what Bradley now asserts are prior consistent statements of the informant, Bradley's lawyer was not ineffective in this regard. See *Nations v. State*, 290 Ga. 39, 43 (4) (b) (717 SE2d 634) (2011); *Abernathy v. State*, 299 Ga. App. 897, 905 (3) (d) (685 SE2d 734) (2009).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

HUNSTEIN, Chief Justice, concurring.

I concur in the result and write separately only to note my growing discomfort with our recent case law regarding merger of the offenses of armed robbery and aggravated assault. I agree that *Long v. State*, 287 Ga. 886 (2) (700 SE2d 399) (2010), cited by the majority, presents an analogous fact pattern and thus compels us to hold under the circumstances of this case that the two offenses must merge. However, I disagree with the sweeping statement in *Long* that "there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery," id. at 889 (2), to the extent it purports to hold as a matter of law that these two offenses will always merge. There may be a fact scenario not yet presented that will warrant our retreat from this absolute position.

In addition, it strikes me as incongruous that our precedent compels us to merge the above offenses committed against the injured-but-surviving victim while allowing us to sustain separate offenses (armed robbery and murder) against the deceased victim. Nevertheless, applying the "required evidence" test we adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006), this result is clearly correct in this case. Prosecutors seeking to avoid this incongruity in similar circumstances might be wise to seek indictment on aggravated battery, as an alternative to aggravated assault.

DECIDED MARCH 18, 2013.

*John G. Edwards*, for appellant.

*J. David Miller*, District Attorney, *Jessica W. Clark*, *Bradfield M. Shealy*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Kenneth W. Mishoe*, Assistant Attorney General, for appellee.

---

proper consideration of the effectiveness of counsel "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.").