**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 27, 2014**

# In the Court of Appeals of Georgia

A13A2099. DEAN v. THE STATE.

PHIPPS, Chief Judge.

Michael Dean appeals his convictions for armed robbery,[1] aggravated assault,[2] and possession of a firearm during the commission of a felony.[3] He contends that the trial court erred by: 1) allowing the state to introduce a witness's out-of-court statement without laying a proper foundation and after the witness had been released from subpoena; and 2) not merging the aggravated assault offense into the armed robbery offense for sentencing purposes. For the reasons that follow, we affirm the

---

[1] OCGA § 16-8-41.

[2] OCGA § 16-5-21.

[3] OCGA § 16-11-106.

judgment in part, vacate the judgment in part, and remand the case for re-sentencing and for consideration of ineffective assistance of counsel claims.

The evidence at trial showed the following. N. J. agreed to work as a confidential informant for law enforcement officials to "work off" pending criminal charges. As part of that agreement, he arranged for the purchase of marijuana from Richard Burnam. After N. J. made a phone call to set up the deal, officers gave him $600 to purchase the marijuana. N. J. put the $600 in his pocket, where he also had approximately $115 of his own money. N. J. did not have a valid driver's license, so a friend, L. M., drove him to a location to meet Burnam. L. M. drove her truck, and she and N. J. picked up Burnam, who sat in the back seat. L. M. drove to a different location, where the three met Dean. Law enforcement officers followed.

N. J. testified that when they encountered Dean, Dean initially spoke with him, but then stated that he was "going to deal with [Burnam]." Dean walked to the rear passenger door of the truck, where Burnam sat, and opened the door. Dean then returned to N. J. and pointed a gun at his side, demanding, "Let me get that." Dean then took N. J.'s money and cell phone, and asked: "Do I need to get the keys to the truck or anything like that?" N. J. testified that he told Dean, "No, man. You can have that." Dean and Burnam then ran away. With N. J. in the truck, L. M. then sped away.

2

They encountered law enforcement officers "coming down the road. . . . So when [L. M. and N. J.] got to the top of the road, [N. J.] got out the truck . . . and got in the truck with [the] [o]fficer . . . and told him what had just happened."

Officers chased Dean and Burnam, and had them in custody within about five minutes. Officers found $118 on Burnam's person, $600 on Dean's person, and a revolver in the area where Dean was apprehended.[4] During the chase, officers observed Dean reach for his waistband and make a motion tossing something on the ground. As one officer testified, "I searched the immediate area of where he was at . . . and that's when I found a revolver."

L. M. testified that she did not see a robbery occur, but that she saw that "something wasn't right." She affirmed that what she had heard did not "sound like a drug deal," and she stated that after N. J. had shut his door, he told her to "get out of here." L. M. testified that she saw the individual whom she and N. J. had picked up and an individual whom she stated had approached N. J.'s side of the truck, running away, and that she had "mashed the gas and just tried to get out of there."

---

[4] Dean and Burnam were jointly indicted, but Burnam's case was severed from Dean's for trial.

3

At trial, Burnam testified pursuant to a grant of immunity. He stated that the drug transaction that occurred between Dean and N. J. was "normal," that he did not see Dean with a gun, and that he did not witness a robbery. But before trial, Burnam had given law enforcement officers a written statement of his account of what had occurred; that written statement was presented to the jury. In the statement, Burnam admitted that he had arranged for N. J. to purchase marijuana from his "weedman," whom Burnam identified at trial as Dean; but stated that he (Burnam) ran away from the transaction because he saw Dean running up to the truck with another individual and thought that Dean and the individual were "gonna get me too!" Burnam wrote that after he ran away and "made it to the other side of the apartments, [Dean] came out of nowhere and asked me what [I] was running for and [I] said, cause thought u was about to 'Rob' us. [A]nd he said [I] didnt want u [I] got what [I] wanted. . . . And he said he was going to holla at me when [I] got ready to go thru the pathway[.]"

1. Dean contends that the trial court erred by allowing the state to introduce Burnam's out-of-court statement because: (a) the prosecutor failed to lay a proper foundation for admission of the statement; and (b) the statement was admitted after the witness had been released from subpoena.

(a) When the prosecutor moved to have Burnam's written statement admitted in evidence through the testimony of an investigator, Dean's counsel stated: "I object to the admission of the statement, Your Honor. . . . Mr. Burnam, has already spoken. He testified," and "We've excused him." The prosecutor argued that the statement was a prior inconsistent statement and could be read to the jury in its entirety. The trial court agreed, and allowed the investigator to read the statement to the jury. The contention that the trial court erred because a proper foundation was not laid for admission of Burnam's out-of-court written statement was waived by Dean's failure to raise that objection below.[5]

(b) Dean's contention that the trial court erred by allowing the state to introduce Burnam's out-of-court written statement because the statement was admitted after the trial court had released Burnam from his subpoena presents no basis for reversal.

---

[5] See *Land v. Burkhalter*, 283 Ga. 54 (1) (656 SE2d 834) (2008); *Reynolds v. State*, 230 Ga. App. 458 (1) (496 SE2d 474) (1998); *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395) (1990) ("If counsel desires to preserve an objection upon a specific point for appeal, the objection must be made at trial upon that specific ground. An objection on a specific ground at trial waives any objection to that evidence on other grounds on appeal.") (citations and punctuation omitted).

A prior inconsistent statement of a witness should not be admitted unless the witness is available at that time for cross-examination.[6] Here, after Burnam testified and was excused, the prosecutor called a law enforcement officer to the witness stand, and Burnam's prior written statement was read to the jury by this officer, to whom Burnam had given the statement. During Burnam's testimony, the prosecutor as well as defense counsel had an opportunity to examine Burnam about the statement which Burnam admitted to having written, and they examined Burnam extensively, using the written statement at issue.

Therefore, "it is highly probable that the error in admitting the [out-of-court written statement] did not contribute to the verdict and was, therefore, harmless[.]"[7]

Burnam had "ample opportunity to explain or deny the prior contradictory statements,"[8] and he did so.

> With respect to the truth of the prior statement, the jury ha[d] the opportunity to observe [Burnam] as he . . . repudiate[d] or var[ied] his former statement, and as he [was] cross-examined. Thus, the jury [could]

---

[6] See *Brinson v. State*, 268 Ga. 227, 227-228 (2) (486 SE2d 830) (1997).

[7] Id. at 228 (2) (citation omitted).

[8] Id.

6

determine whether to believe the present testimony, the prior statement -- or neither.[9]

2. Dean contends that the trial court erred by not merging the aggravated assault offense into the armed robbery offense for sentencing purposes. We agree.

In the indictment, the state alleged that Dean committed aggravated assault in that he did "assault [N. J.] by pointing a .38 Taurus revolver at him, a firearm, which is a deadly weapon." In the indictment, the state also alleged that Dean committed armed robbery in that he did "with intent to commit theft, take U. S. Currency and a red Verizon cell phone, property of [N. J.], from the person and immediate presence of [N. J.] by use of a .38 Taurus revolver, a firearm, which is an offensive weapon."

> [The Supreme Court of Georgia has] held that there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery.[10] And because aggravated assault with a deadly weapon does not require proof of any element that armed robbery does not,

---

[9] Id.

[10] *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) (finding that the "deadly weapon" requirement of aggravated assault with a deadly weapon is the equivalent of the "offensive weapon" requirement of armed robbery, and relying on *Lucky v. State*, 286 Ga. 478, 481 (689 SE2d 825) (2010), which established that the assault requirement of aggravated assault is the equivalent of the "use of an offensive weapon" requirement of armed robbery).

convictions for both offenses will merge — but only if the crimes are part of the same act or transaction.[11]

The state argues that in this case, the crimes of armed robbery and aggravated assault did not involve the same conduct and therefore, did not merge. The state asserts that the evidence was sufficient for a jury to find that the armed robbery was completed after Dean pointed the revolver at N. J. and took N. J.'s cell phone and keys, and that the facts supporting the aggravated assault occurred when, after taking N. J.'s money and cell phone, Dean continued to point the revolver at Jones and "made the additional statement about taking the keys to the truck."

But the evidence showed that the armed robbery began when Dean pointed the revolver at N. J. for the purpose of robbing N. J., during which time the aggravated assault also occurred; and the armed robbery concluded immediately thereafter when Dean took N. J.'s money and cell phone.[12] There was no evidence of a break in Dean's pointing the revolver at N. J. between the time Dean obtained the money and cell phone and the time Dean asked whether he should also take the keys to the

_____

[11] *Bradley v. State*, 292 Ga. 607, 610 (1) (c) (740 SE2d 100) (2013) (citation and punctuation omitted).

[12] See id.; *Thomas v. State*, 289 Ga. 877, 880-881 (3) (717 SE2d 187) (2011).

8

vehicle.[13] The evidence showed one act or transaction.[14] Accordingly, the aggravated assault was included in the armed robbery, Dean's conviction and sentence for aggravated assault are vacated, and the case is remanded to the trial court for resentencing.[15]

3. Dean moved this court to remand the case to the trial court so that he may assert claims of ineffective assistance of trial counsel. We grant Dean's motion.

After Dean's conviction, trial counsel timely filed a notice of appeal to this court. More than a year later, trial counsel withdrew as counsel of record. New appellate counsel filed an entry of appearance less than three months after trial counsel had withdrawn as counsel of record, which was approximately one and one half months before the case was docketed with this court. "Thus, there was no opportunity to assert a claim of ineffective assistance of trial counsel at the trial level,

---

[13] See *Sears v. State*, 292 Ga. 64, 73-74 (6), n. 7 (734 SE2d 345) (2012).

[14] See *Bradley*, supra; *Sears*, supra; *Thomas*, supra.

[15] See *Sears*, supra at 73-74 (6); *Thomas*, supra at 880 (3).

and we remand the case to the trial court [also] for appropriate findings concerning the issue of ineffective assistance of trial counsel."[16]

*Judgment affirmed in part and vacated in part, and case remanded. Ellington, P. J., and Branch, J., concur.*

---

[16] *Peterson v. State*, 274 Ga. 165, 171-172 (6) (549 SE2d 387) (2001) (citation omitted).